**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| Jennifer Vang,<br>on behalf of herself and all<br>others similarly situated,<br><div align="right">**Plaintiffs,**</div><br>v.<br><br>Kohler Co.,<br>a Domestic Corporation,<br><div align="right">**Defendant.**</div> | Case No. 2:09-cv-00842-WEC<br><br>**PLAINTIFF'S BRIEF IN SUPPORT<br>OF MOTION FOR CONDITIONAL<br>CERTIFICATION** |

# TABLE OF CONTENTS

**INTRODUCTION**

**FACTUAL BACKGROUND**

**A.** Kohler's Illegal Practices of Allowing Plaintiff To Work Off The Clock................. 4

**B.** Other Administrative Employees Have Been Similarly Subjected To Kohler's Illegal Practices. ........................................................................................ 6

**C.** Other Employees Have Come Forward To Join The Suit And Others Will Likely Do So Upon Receiving Court Authorized Notice And Instruction How To Do So.. 7

**ARGUMENT**

**I.** The Established Two-Step Certification Process Requires Conditional Certification Be Freely Granted................................................................................................ 7

**II.** Plaintiffs Have Satisfied The Lenient "Similarly Situated" Standard And The Court Should Therefore Grant Conditional Certification of The Class. ............................ 10

**A.** Plaintiff and the Administrative Employees have been subjected to the same policy or plan by Kohler. .................................................................................... 10

**B.** Kohler's policy of not compensating its Administrative Employees for all of the hours that they worked during the workweek violates the FLSA. ........................ 12

**III.** Court Authorized Notice To Similarly Situated Employees Is Necessary and Plaintiff's Proposed Notice is Proper. ............................................................. 14

**A.** Accurate and timely notice is essential to preserve and protect the similarly situated Production and Support Employees rights. ................................................ 14

**B.** Plaintiffs' proposed notice is accurate and informative. ............................................ 15

**C.** The Court should prohibit Kohler from sending pre-notice communications to prospective class members that are not approved by the Court. ........................... 16

**CONCLUSION**

Case 2:09-cv-00842-WEC   Filed 09/09/10   Page 2 of 17   Document 37

## INTRODUCTION

Plaintiff Jennifer Vang, on behalf of herself and all other similarly situated individuals, respectfully files this Brief in Support of her Motion for Conditional Certification and to Facilitate Notice under 29 U.S.C. 216(b).

The Fair Labor Standards Act ("FLSA") 29 U.S.C. §201 *et seq.* allows an employee to bring and litigate their claims together as a collective action. Because the current and former employees' statutes of limitations under the FLSA continue to run until each individual affirmatively files a consent form with the Court, the conditional certification process provides a vehicle for current and former employees to receive timely and informative notice of their rights under the FLSA. The continued running of each individuals statute of limitations makes timely notice imperative – current and former employees' rights to recover back wages may be extinguished and lost forever before they even know that their rights have been violated.

Plaintiff Jennifer Vang ("Plaintiff") has brought this action as such a collective action on behalf of herself and all other similarly situated employees (collectively "Administrative Employees"). Plaintiff alleges that Kohler Co. ("Kohler") has suffered or permitted Plaintiff and other similarly situated Administrative Employees to work without being compensated for each hour worked, including Kohler's failure to pay the requisite overtime premium guaranteed under the FLSA for each hour worked in excess of forty (40) in a workweek – that is, Kohler allowed these employees to work "off the clock." Specifically, Plaintiff alleges that Kohler permitted these employees to work off the clock by instructing the Administrative Employees to no longer record overtime hours worked, by utilizing an illegal "compensatory time" or "comp time" scheme and by allowing the Administrative Employees to work through uncompensated meal periods.

3

Plaintiff respectfully moves the Court to conditionally certify this case as a collective action and authorize timely notice informing each similarly situated employees of their rights, including:

> All persons who are or have been employed by Kohler as an "Administrative Employee", at any time from September 2, 2006 through the final disposition of this case, who have worked without being compensated for each hour worked under a "comp time" or "compensatory time" scheme and/or by following a policy not allowing employees to record every hour worked including working through unpaid lunch breaks.

Conditional certification of this matter is warranted as the Administrative Employees have been compensated in the same manner, performed the same or similar work for Kohler, and have been subjected to the same illegal policies of Kohler which have robbed the putative class members of their hard earned wages.

## **FACTUAL BACKGROUND**

### A.    **Kohler's Illegal Practices of Allowing Plaintiff To Work Off The Clock.**

On September 2, 2009, Plaintiff Jennifer Vang filed this complaint on behalf of herself and all others similarly situated against her former employer, Kohler, alleging violations of the Fair Labor Standards Act and Wisconsin's Wage Payment and Collection Laws. (Compl. ¶1; Dkt. 1.) Plaintiff's complaint alleges that Kohler has suffered or permitted its Administrative Employees to work without being fully compensation for each hour worked during each workweek. (Compl. ¶3; Dkt. 1.) That is, Kohler has allowed its Administrative Employees to work "off the clock." Other similarly situated Administrative Employees have come forth with declarations to support Plaintiff's allegations. [1]

---

[1] *See generally* August 15, 2010 Declaration of Janine Bergeron (hereafter cited as Bergeron Decl.); June 11, 2010 Declaration of Lori Ricker (hereafter cited as Ricker Decl.); September 7, 2010 Declaration of Kia Yang (hereafter cited as Yang Decl.); September 7, 2010 Declaration of Corrine Raml (hereafter cited as Raml Decl.)

Kohler fostered a corporate culture allowing off the clock work in multiple regards. First, Plaintiff has alleged that she and other similarly situated Administrative Employees have been instructed by Kohler that recording overtime was no longer allowed. (Compl. ¶¶20-21, Dkt. 1.); (January 7, 2010 deposition of Jennifer Vang pp. 88-90).[2] However, when this happened, these employees workloads did not change.[3] To deal with the conflicting policies – no recording of overtime, but still having to get work done – Plaintiff and other Administrative Employees worked in excess of their regularly scheduled workdays with the knowledge of their supervisors. (Compl. ¶¶ 13,14,24,25; Dkt. 1.); (Vang Dep. pp. 103-104.)[4] Second, Plaintiff alleges that Kohler has engaged in an illegal "compensatory time" or "comp time" scheme whereby Plaintiff and other Administrative Employees would not be compensated for hours worked in excess of forty (40) in a workweek but rather were told that they would be allowed to "comp" the hours during a future workweek. (Compl. ¶¶ 14, 27-28; Dkt. 1.)[5] Third, Plaintiff has similarly alleged that on many occasions she and other Administrative Employees were required to work through all or part of their one-hour unpaid lunch break without receiving compensation for the time worked during the "break." (Compl. ¶23; Dkt. 1.)[6]

Facilitating Kohler's ability to turn a blind eye to the off the clock culture is the computer program in which Kohler's Administrative Employees record their hours of work ("Workbrain"). Workbrain did not allow Administrative Employees to enter the specific time periods worked (the start time each workday, the end time each workday, the start and end time of any unpaid break). (Compl. ¶19; Dkt. 1.)[7] Rather, Administrative Employees were only able to input an

---

[2] The January 7, 2010 deposition of Jennifer Vang will hereafter be cited as (Vang Dep. p. #)
[3] Yang Decl. ¶9; Bergeron Decl ¶8; Ricker Decl ¶7
[4] *See also* Yang Decl. ¶11; Ricker Decl ¶9
[5] *See also* Yang Decl. ¶¶13-15; Bergeron Decl ¶¶12-14 Ricker Decl ¶¶12-14; Raml Decl. ¶¶12-14
[6] *See also* Yang Decl. ¶¶7-8; Bergeron Decl ¶7; Ricker Decl ¶6; Raml Decl. ¶7
[7] *See also* Yang Decl. ¶5; Bergeron Decl ¶¶5-6; Ricker Decl ¶5; Raml Decl. ¶¶5-6

Case 2:09-cv-00842-WEC   Filed 09/09/10   Page 5 of 17   Document 37

approximate number of hours worked and there was a default setting that entered an eight (8) hour workday regardless of the number of hours actually worked. *Id.*

## B. Other Administrative Employees Have Been Similarly Subjected To Kohler's Illegal Practices.

Other Administrative Employees in various positions at Kohler have been subjected Kohler's policy of permitting its Administrative Employees work off the clock.[8] The Administrative Employees were subjected to the same Kohler policy that forbade them from recording all of their hours worked when they were in excess of forty (40) in a workweek,[9] to work through unpaid "breaks" without compensation,[10] and to use "comp time" in a subsequent workweek for overtime hours worked during a previous workweek.[11] This was not a limited practice. Several Administrative Employees state in sworn declarations that they have spoken to other Administrative Employees who suffered similarly under Kohler's culture of turning a blind eye to off the clock work.[12] Kohler's Area Associate I, Area Associate II, Administrative Support I, Administrative Support II, and Senior Secretaries[13] all have worked off the clock under Kohler's policies in the distribution center,[14] learning center,[15] engineering services division,[16] call center,[17] and plumbing Americas division.[18]

---

[8] *See generally* Bergeron Decl.; Raml Decl.; Ricker Decl.; Yang Decl.
[9] Yang Decl. ¶¶ 9,12,15,16; Raml Decl. ¶¶8,10,14,15; Bergeron Decl ¶¶ 8,10,11,14,15; Ricker Decl ¶¶ 7,11,14,15
[10] Yang Decl. ¶7; Raml Decl. ¶7; Bergeron Decl ¶7; Ricker Decl ¶6
[11] Yang Decl. ¶¶ 13-15; Raml Decl. ¶¶12-14; Bergeron Decl ¶¶ 12-14; Ricker Decl ¶¶ 12-14
[12] Yang Decl. ¶¶ 12,15-16; Raml Decl. ¶¶11, 14-15; Bergeron Decl ¶¶ 11, 14-15; Ricker Decl ¶¶ 11, 14-15
[13] Ricker Decl.¶¶ 2, 4, 14, 15.; Bergeron Decl. ¶¶ 2,4,11,14,15; Raml Decl. ¶¶2,4,11,14,15; Yang Decl. ¶¶ 2,4,15,16
[14] Bergeron Decl. ¶ 2.
[15] Ricker Decl. ¶ 3
[16] Raml Decl. ¶2
[17] Yang Decl. ¶2
[18] *Id*.

**C.** **Other Employees Have Come Forward To Join The Suit And Others Will Likely Do So Upon Receiving Court Authorized Notice And Instruction How To Do So.**

Since filing this claim, two former employees, in addition to Plaintiff, have affirmatively opted-in to this matter in order to enforce their rights to be properly paid for all hours worked under the FLSA.[19] Further, other Administrative Employees would likely join this lawsuit if given the opportunity to join as several putative class members have made declarations which note that they have spoken with other Administrative Employees who have been subject to the same "off the clock" and "comp time" policies.[20]

## ARGUMENT

**I.** **The Established Two-Step Certification Process Requires Conditional Certification Be Freely Granted.**

The FLSA permits plaintiffs to bring a collective action in an effort to remedy alleged violations of the FLSA on behalf of herself and her fellow co-workers:

> [a]n action … may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
> 29 U.S.C. § 216(b).

A collective action under the FLSA differs from the typical class action under Fed. R. Civ. P. 23 in that under the FLSA, an individual wishing to join the action must opt-in rather than opt-out. *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Importantly, it is not until an individual causes to be filed in Court their consent in writing, can he or she opt-in to a collective action. 29 U.S.C. § 216(b). This distinction is one of great importance as an individual's statute of limitation is not tolled and therefore continues to run

---

[19] Bergeron, Janine (Dkt. 32-0); Raml, Corrine (Dkt. 35-0)
[20] *See generally* Bergeron Decl.; Raml Decl.; Ricker Decl.; Yang Decl.

7

until he or she files such a consent form. 29 U.S.C. §§ 255 and 256(b). It is imperative that potential opt-in plaintiffs be notified of their claim as expeditiously as possible to avoid the continued diminishment of their claims – every day that passes is a day of damages each potential opt-in Plaintiff will be unable to recover. Delay in providing notice to the potential opt-in Plaintiffs may cause their damages to be completely extinguished.

In addressing a request for conditional certification of a collective action under the FLSA, courts consider whether the plaintiffs have shown the existence of a definable class of plaintiffs who are "similarly situated." *Hoffmann-La Roche*, 493 U.S. at 170; *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 2008 U.S. Dist. LEXIS 102318 (E.D. Wis. Dec. 17, 2008) (Judge Griesbach). While the FLSA does not provide a definition used in determining who is "similarly situated," federal courts have used a two-step approach to determine the meaning – an approach which Judge Griesbach recently adopted as the appropriate framework. *Id*; Adair v. Wis. Bell, Inc., 2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008) (Judge Griesbach). Citing two cases from the Western District of Wisconsin,[21] Judge Griesbach provided an explanation of the two step process:

> During the first step, the court must determine whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. If so, notice may be sent to other potential members of the class. Then, typically upon a defense motion for decertification at the close of discovery, the court proceeds to step two, at which point it must determine whether plaintiffs who have opted in are, in fact, similarly situated.
> *Adair*, 2008 U.S. Dist. LEXIS 68942, at *7 (E.D. Wis. Sept. 11, 2008) (internal citations omitted).

The burden placed upon Plaintiff at this first step is fairly low, yet Plaintiff's modest factual showing is more than a mere formality. *Adair*, 2008 U.S. Dist. LEXIS 68942, at *8. In light of the FLSA's remedial purpose, courts have repeatedly held that the similarly situated

---

[21] *Austin v. Cuna Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006) and *Kasten v. St.-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 956 (W.D. Wis. 2008).

8

requirement of 216(b) must be interpreted generously to permit workers to collectively pursue their FLSA claims. *See, e.g., Hipp v. Liberty National Ins. Co.*, 252 F. 3d 1208, 1214 (11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]"); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D. N.Y. 1995) (imposition of a rigorous inquiry would undermine "the importance of early judicial management to assure efficient resolution of similar claims."); *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) (rigorous inquiry into § 216(b)'s similarly situated requirement "would unnecessarily hinder the development of collective action and would undermine the 'broad remedial goals' of the anti-discrimination provisions of the FLSA." (quoting *Hoffman-LaRoche*, 493 U.S. at 173)).

There need only be "some factual nexus that connects [the Plaintiff] to other potential plaintiffs as victims of an unlawful practice" at Kohler. *Sharpe v. APAC Customer Servs.*, 2010 U.S. Dist. LEXIS 1671, at *19 (W.D. Wis. Jan. 8, 2010); *Sjoblom v. Charter Communs., LLC*, 2007 U.S. Dist. LEXIS 93879, at *27 (W.D. Wis. Dec. 19, 2007); *Austin*, 232 F.R.D. at 605-606. In determining whether Plaintiff has made this initial showing, courts rely on the complaint and any declarations submitted. *Sjoblom*, 2007 U.S. Dist. LEXIS 93879, *27; *Austin*, 232 F.R.D. at 606. Courts do not need an excessive amount of support to grant the motion. *DeKeyser*, 2008 U.S. Dist. LEXIS 102318, at *11 (seven affidavits sufficient to conditionally certify class of four thousand employees); s*ee also Shabazz v. Asurion Ins. Serv.*, 2008 WL 1730318, at 3 (M.D. Tenn. Apr. 10, 2008) (four declarations sufficient); *Sipas v. Sammy's Fishbox, Inc.*, 2006 WL 1084556, at 2 (S.D.N.Y. Apr. 24, 2006) (three affidavits and the contents of the complaint sufficient); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55 (S.D.N.Y. 2005) (one affidavit sufficient when potential opt-ins all have the same job and were all classified as exempt at over 108 facilities in 21 states); *Bell v. Mynt Entm't LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (seven

9

affidavits demonstrating a "reasonable basis" sufficient); *Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512 at 3-4 (S.D. Fla. May 17, 2006) (two affidavits constituted a "rudimentary showing of commonality" sufficient for conditional certification and judicial notice); *DeAsencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (four affidavits sufficient).

## II. Plaintiffs Have Satisfied The Lenient "Similarly Situated" Standard And The Court Should Therefore Grant Conditional Certification of The Class.

As the Court is not required to "find uniformity in each and every aspect of employment to determine a class of employees is similarly situated," Plaintiff has established that she and other Administrative Employees are sufficiently similar with regard to Kohler's policies of failing to compensate them properly for all hours of work performed each workweek. *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 2008 U.S. Dist. LEXIS 102318, * 13 (E.D. Wis. Dec. 17, 2008) (internal citations omitted). Plaintiff's burden is not heavy and is met by making a "modest factual showing sufficient to show they were subjected to the same policy denying them overtime wages." *Id.* Plaintiff has met that modest factual showing of a common policy or plan by Kohler of allowing its Administrative Employees to work off the clock thereby not compensating them for all time they spent working during the workweek. Plaintiff has met this burden through the allegations in her complaint which are further supported by the declarations of similarly situated employees as described *supra*.

### A. Plaintiff and the Administrative Employees have been subjected to the same policy or plan by Kohler.

Plaintiff's motion is supported by her complaint, deposition testimony, and the declarations of four former Administrative Employees of Kohler. As summarized *supra* in the Factual Background, the declarations of the former hourly Administrative Employees clearly meet the lenient conditional certification standard establishing that they are similarly situated to

10

Plaintiff as Kohler has failed to compensate the Administrative Employees for all time they spent performing work during the workweek. The Administrative Employees were informed by their respective supervisors that they were no longer allowed to record overtime on their weekly timesheets and were instead limited to entering forty (40) hours for the workweek.[22] Likewise, the Administrative Employees participated in Kohler's illegal "comp time" system whereby they would "comp" hours worked in excess of forty (40) in one workweek by taking a proportional amount of time off during a different workweek without receiving any additional compensation.[23] The supervisors of the Administrative Employees were aware that the Administrative Employees were working in excess of forty (40) hours during the workweek, working through their lunch breaks and using "comp time."[24]

Plaintiff has testified during her deposition that she was told by her supervisor that she was not allowed to record overtime on her weekly timesheets except in very limited circumstances. (Vang Dep. pp.101-104.) Plaintiff also testified that she had first hand conversations with other Administrative Employees who were instructed by their supervisors that overtime hours could not be recorded and that they would need to use comp time instead. (Vang Dep. pp.106; 110-111.) These statements, along with the declarations of other Administrative Employees, described *supra*, show that although employees may have been instructed in slightly different manners by different supervisors, they were still subject to the same over-arching policy of Kohler whereby no hours worked in excess of forty (40) in a workweek were allowed to be recorded (except in very limited circumstances) and that employees were instructed to use "comp time." This evidence is certainly enough to satisfy the lenient conditional certification standard as it is not necessary for a collective action plaintiff to

[22] *See supra*
[23] *See supra*
[24] *See supra*

11

"come up with evidence of hundreds of particular overtime violations to make the requisite factual showing." *Sharpe v. APAC Customer Servs.*, 2010 U.S. Dist. LEXIS 1671, *16-17 (W.D. Wis. Jan. 8, 2010) (internal citation omitted) (nationwide class conditionally certified although almost all of the opt-in plaintiffs worked at one facility and were told different things about working overtime as their testimony indicated that the pressure to work overtime did not come from one or two rogue supervisors.)

    **B.**    **Kohler's policy of not compensating its Administrative Employees for all of the hours that they worked during the workweek violates the FLSA.**

      The overarching issue in this case is Kohler's failure to pay its hourly Administrative Employees for all the time they work, through practices that require the Administrative Employees to work "off the clock." Kohler accomplished this through utilizing an illegal "comp time" scheme, by not allowing the Administrative Employees to properly record all of their work hours, and by allowing the Administrative employees to work through their unpaid breaks. Resolution of the claims here will involve interpretation of the FLSA's definition of "work," and whether Kohler's policies and practices result in Administrative Employees not receiving full compensation for all work time.

      The starting point for analyzing "off-the-clock" FLSA claims is to determine whether the time for which compensation is sought is in fact compensable under the FLSA. Though the FLSA does not define compensable work, it does define "employ" broadly as "to suffer or permit to work." 29 USC 203(g). The Supreme Court in *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123* initially defined the meaning of work under the Act "as those words are commonly used--as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 321 U.S. 590, 598 (1944). In *Anderson v. Mt. Clemens Pottery Co.*,

the Supreme Court shortly thereafter dropped the "exertion" requirement in practice and emphasized that compensable work hours are characterized instead by the employer's control of the employee's time. 328 U.S. 680 (1946). The Court stated that "the statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace, [and that] the time spent in these activities must be accorded appropriate compensation." *Id.* at 690-91. The implementing regulations define compensable work time as time spent by a worker for the benefit of the employer, with the employer's actual or constructive knowledge, performing the worker's "principle" activity or functions integral to his or her principle activity. 29 C.F.R. §§ 785.6-7, 785.9, 785.11, 785.24. All of the time spent working "off the clock" by the Administrative Employees is for the benefit of Kohler (as opposed to for the benefit of the employees), was performed at Kohler's facilities with the knowledge of supervisors and/or was e-mailed and worked on at home by employees and thus the Administrative Employees must be compensated accordingly.[25] By failing to compensate the Administrative Employees for "off the clock" time and not allowing all hours in excess of forty (40) to be recorded, Kohler has violated the FLSA.

Because of the predominant and compelling common issues involved in "off the clock" cases, district courts regularly conditionally certify collective actions involving "off the clock" allegations. *Spoerle*, No. 07-cv-300, 2008 WL 2002221, at *7 (W.D. Wis. May 6, 2008); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 2008 U.S. Dist. LEXIS 102318, at *14 (E.D. Wis. Dec. 17, 2008) (granting conditional certification and notice to foundry employees seeking compensation for donning and doffing PPE, walking to and from work stations, and showering). Therefore, the Court should conditionally certify this collective action based on the common

---

[25] Bergeron Decl. ¶¶ 14,15; Ricker Decl. ¶¶ 9,10,11; Yang Decl. ¶¶8,11;

Case 2:09-cv-00842-WEC   Filed 09/09/10   Page 13 of 17   Document 37

issues involved with the Administrative Employees "off the clock" including the "comp time" work.

**III.    Court Authorized Notice To Similarly Situated Employees Is Necessary and Plaintiff's Proposed Notice is Proper.**

As Plaintiffs have met their initial burden that they were subjected to the same illegal practices of Kohler as other similarly situated employees, this Court should conditionally certify the action as a collective action and authorize notice to be sent to the similarly situated employees as well as posted at Kohler's facilities that contain Administrative Employees.  In so doing, the Court should exercise its discretion in ensuring that the similarly situated Administrative Employees receive notice that is timely, accurate, and informative.

**A.    Accurate and timely notice is essential to preserve and protect the similarly situated Production and Support Employees rights.**

The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving <u>accurate</u> and <u>timely</u> notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170 (emphasis added).  District courts are encouraged to become involved in the notice process early, to ensure "timely, accurate, and informative" notice and to help maintain control of the litigation. *Id*. at 171-72.

The prompt provision of Court approved notice will limit the diminishment of putative collective action members legal rights due to the running of the statute of limitations on their claims. *See Redman v. U.S. West Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998).  Furthermore, conditional certification of this collective action will protect judicial economies as deciding the cases collectively, rather than on an individual basis, will vastly conserve judicial resources. Finally, without notice, and because of the short statute of limitations provided by the FLSA,

14

many putative collective action members may not know that their federally protected right to be properly compensated was violated.

**B.      Plaintiffs' proposed notice is accurate and informative.**

Plaintiff's proposed "Notice of FLSA Lawsuit," attached as Exhibit A, is "timely, accurate, and informative." *See Hoffman-LaRoche*, 493 U.S. at 172.  It is carefully drafted to mirror notice forms that courts have approved in other FLSA cases, and to state, in plain, non-legal terms, the nature of the claims, the rights of all parties involved, and the employee's right to be free from retaliation.

Dissemination of notice through first class mail in addition to other methods, such as posting within a workplace, ensures that potential collective action class members receive sufficient notice.  *See In re Pilgrim's Pride*, 2008 U.S. Dist. LEXIS 40360, at *3 (ordering notice to be posted at defendant facilities "in a place visible and accessible to…processing workers"); *see also Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) (authorizing notice by first class mail and through postings at the putative plaintiffs' workplaces); *Johnson v. Am. Airlines, Inc.*, 531 F.Supp. 957, 961 (N.D. Tex. 1982) (notice reasonable when communicated by direct mail, publication, and postings on company bulletin boards at various locations); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 531 (S.D.N.Y. 1980) (plaintiffs authorized to post and mail the proposed notice).  Plaintiffs request this additional form of notice as Kohler's database of contact information may not be up to date or may have errors and because putative class members might disregard the mail notice as they are unaware of its significance.

15

**C.   The Court should prohibit Kohler from sending pre-notice communications to prospective class members that are not approved by the Court.**

Once the class is conditionally certified, current and former employees who are prospective class members will be sent a Court approved notice informing them of their rights to participate in the pending action.  As there is the potential for abuse in collective actions, such as unapproved, misleading communications to absent class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See Gulf Oil Company v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).  Based on prior conduct of Kohler, Plaintiff has concerns that communications may be sent by Kohler to current employees who are members of the prospective class with the intent to dissuade those employees from exercising their rights to participate in this action.

Prior to, or contemporaneous to, providing plaintiff's counsel with the names and contact information of current and former employees as ordered by the Court's June 29, 2010 order (Dkt. 31-0), Kohler sent a letter to current employees providing information regarding the pending lawsuit (September 9, 2010 Declaration of Larry A. Johnson).  If any other similar letter is sent to current Kohler employees prior to or while the notice period is pending it likely will have the effect of discouraging current employees from exercising their right to participate in the lawsuit. At this time, Plaintiff simply requests that Kohler (including any of its attorneys or agents) be prohibited from providing to the prospective class members any notice of this lawsuit other than the Court authorized notice regarding the nature of this lawsuit until the "opt-in period" has expired.

Such an order would not prejudice Kohler in any way as, "(1) it does not interfere with communications unrelated to the current action and concerning the ongoing business relationship

16

between Defendants and the potential class members; (2) its duration is appropriate because there is no legitimate reason for Defendants to communicate with class members, ex parte, before the end of [the opt-in period]; and (3) any less restrictive order would not effect the collective action's purposes." *Belt v. Emcare, Inc.,* 299 F. Supp. 2d 664,669 (E.D. Tex. 2003) (citing *Hampton Hardware, Inc.,* 156 F.R.D. at 634)

## CONCLUSION

At this preliminary stage, Plaintiffs have produced a factual basis from which this Court should determine that similarly situated plaintiffs exist. Therefore, Plaintiffs respectfully request the Court follow the well established precedent from the United State Supreme Court, as well as recent district court cases from this Circuit and around the country, and issue an order: 1) appointing counsel of record as Collective Action Counsel; 2) appointing the form and content of the Notice of Collective Action; and 3) requiring Kohler to provide Collective Action Counsel a list of all person known to Kohler to meet the above definition, including their name, address, phone number, and the last four digits of their social security number; 4)prohibiting Kohler from providing to the prospective class members any notice of this lawsuit other than the Court authorized notice regarding the nature of this lawsuit until after the "opt-in period" has expired; and 5) permitting the putative Collective Action Class members 90 days from the mailing of Notice to opt into this action.

Respectfully submitted this 9th day of September, 2010.

By: **s/LARRY JOHNSON**
    **s/NOAH REINSTEIN**

**Cross Law Firm, S.C**.
**The Lawyers Building**
**845 N. 11th Street**
**Milwaukee, WI 53233**
**(414) 224-0000**
ljohnson@crosslawfirm.com
nreinstein@crosslawfirm.com

Larry A. Johnson
Noah Reinstein
Nola J. Hitchcock Cross

17