**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| **JENNIFER VANG,**<br>**on behalf of herself and all**<br>**others similarly situated,**<br><br>                          **Plaintiffs,**<br>**v.**<br><br>**Kohler Co.,**<br>**a Domestic Corporation,**<br>                          **Defendant.** | **CASE NO.  2:09-cv-00842-WEC**<br><br><br>**BRIEF IN SUPPORT OF MOTION**<br>**FOR RULE 23 CLASS**<br>**CERTIFICATION** |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................ 4

**INTRODUCTION** .................................................................................... 5

**FACTUAL BACKGROUND** ...................................................................... 5

    I.    KOHLER'S WORKBRAIN PAYROLL SYSTEM
        FAILED TO ACCURATELY RECORD EACH HOUR
        WORKED BY KOHLER'S ADMINISTRATIVE
        EMPLOYEES. ................................................................................ 5

    II.   BECAUSE WORKBRAIN DID NOT PLACE AN
        EMPHASIS ON ACCURATE RECORDING OF
        HOURS WORKED AND BECAUSE KOHLER WAS
        CUTTING BACK ON LABOR HOURS, EMPLOYEES
        WORKED OFF-THE-CLOCK TO KEEP UP. ................................ 7

**ARGUMENT** .......................................................................................... 8

    I.    VANG HAS ALLEGED THAT KOHLER'S
        POLICIES UNIFORMLY VIOLATE WISCONSIN
        LAW ................................................................................................ 8

    II.   VANG HAS MET THE FED. R. CIV. P. 23
        STANDARDS FOR CLASS CERTIFICATION ........................... 10

        A.  The Implicit Requirements of Fed. R. Civ. P. 23 are
              Met Because the Class Representative Has Standing
              and is a Member of the Precise, Objective and
              Ascertainable Class. .......................................................... 11

        B.  Vang Has Satisfied the Fed. R. Civ. P. 23(a)
              Requirements .................................................................... 13

            i.   The Class Members are so numerous that
                joinder is impossible ................................................. 13

            ii.  There are questions of law or fact common to
                the class ..................................................................... 14

            iii. The claims of the representative party are
                typical of the claims of the class .............................. 16

            iv. The class representative will fairly and
                adequately protect the interests of the class. ........... 17

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 2 of 25   Document 75

C.  Vang Has Satisfied the Fed. R. Civ. P. 23(b)
    Requirements.............................................................................. 18

        i.  Questions of law or fact common to the entire
            class predominate over individual issues ..................................... 19

        ii. A class action is superior to other methods
            available for fair and efficient adjudication ................................. 21

III.    VANG'S PROPOSED FORM AND MANNER OF
        SERVICE OF NOTICE ARE APPROPRIATE ............................................. 24

CONCLUSION ...................................................................................... 25

# TABLE OF CASES

*Alliance to End Repression v. Rochford*, 565 F.2d 975 (7th Cir. 1977) .......................................12

*Amchem Prods. v. Windsor*, 521 U.S. 591 (U.S. 1997)...............................................17, 18, 19, 21

*Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607 (W.D. Wis. 2003) ................................19, 20

*Bzdawka v. Milwaukee Cnty.*, 238 F.R.D. 469 (E.D.Wis. 2006). ..........................................11

*Carnegie v. Household Int'l, Inc.*, 376 F. 3d 656 (7th Cir. 2004). ..................................13

*Clarke v. Ford Motor Co.*, 220 F.R.D. 568 (E.D. Wis. 2004). .........................................14, 16

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225 (7th Cir. 1983)....................................16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).......................................................8

*Eldred v. Comforce Corp.*, 2010 U.S. Dist. LEXIS 18260 (N.D.N.Y Mar. 2, 2010). ....................................................................................20

*Falcon v. StarbucksCorp.*, 580 F. Supp. 2d 528 (S.D. Tex. 2008).......................................23

*Great Neck Capital Appreciation Investment Partnership, L.P. v. Pricewaterhouse Coopers, L.L.P.*, 212 F.R.D. 400 (E.D.Wis. 2002). ..............................................................................13

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001). ..................................8

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). ..............................................10, 11, 21

*Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 29, 2007). ..............................................................................20

*Plaintiffs Class v. Credit Lyonnais Rouse, Ltd. (In re Sumitomo Copper Litig.)*, 262 F.3d 134, 141 (2d Cir. N.Y. 2001). ..................................15

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992).......................................10, 14, 18

*Temme v. Bemis Co.*, 2009 U.S. Dist. LEXIS 49894 (E.D. Wis. May 28, 2009). ....................................................................................11

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa*, 280 F.3d 124 (2d Cir. 2001). ..............................................................................23

*Wagner v. NutraSweet Co.*, 95 F.3d 527 (7th Cir. 1996)........................................16

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 4 of 25   Document 75

## INTRODUCTION

This case is particularly well suited for class treatment at Vang and the putative class members would individually be without the effective strength to bring their claims given the relatively small amount of damages each putative class member sustained. Vang commenced this action on behalf of herself and all other similarly situated Administrative Employees who were subject to Kohler's culture of permitting its employees to work off-the-clock. Based on common facts, Vang has alleged that Kohler's WorkBrain time keeping system failed to record all the hour Vang and the putative class worked and permitted the Administrative Employees to work off the clock in violation of Wisconsin Wage Laws. The legitimacy of Kohler's policies and culture of off-the-clock work under Wisconsin law is common to the class which predominates over any individual issue.

## FACTUAL BACKGROUND

Plaintiff has alleged that Kohler fostered a corporate culture allowing its Administrative Employees to work "off the clock." Allowing this culture to prosper was Kohler's WorkBrain time keeping system which failed to accurately record each employee's actual hours of work. There are three avenues by which Kohler's administrative employees worked off the clock: through a comp time or compensatory time scheme; by working through unpaid meal breaks; and by working before and after normal scheduled hours of work.

## I. KOHLER'S WORKBRAIN PAYROLL SYSTEM FAILED TO ACCURATELY RECORD EACH HOUR WORKED BY KOHLER'S ADMINISTRATIVE EMPLOYEES.

Kohler's utilizes a computer program called WorkBrain as its timekeeping system which Plaintiff and the putative class were required to use in reporting hours worked. (Karstaedt Decl. ¶ 3(a), Dkt. 52.) However, the way WorkBrain was utilized allowed Kohler to turn a blind eye to its hourly administrative employees off-the-clock work. (Compl. Dkt. 1, ¶ 17-19.)

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 5 of 25   Document 75

WorkBrain automatically enters each administrative employee's regular schedule, including the regular start time and regular end time. (Karstaedt Decl. ¶ 3(e), Dkt. 52.) In other words, WorkBrain provides as a default the employee's normal eight hour a day schedule. (Bergeron Decl. ¶ 5, Dkt. 38; Ricker Decl. ¶ 8, Dkt. 39; Yang Decl. ¶ 5, Dkt. 40; Raml Decl. ¶ 5, Dkt. 41.) WorkBrain was also set up to automatically deduct an unpaid meal break each workday from the Administrative Employees time records. (Bergeron Decl. ¶ 5, Dkt. 38; Ricker Decl. ¶ 8, Dkt. 39; Yang Decl. ¶ 5, Dkt. 40; Raml Decl. ¶ 7, Dkt. 41.) Moreover, rather than record the actual start and end time of each of their workdays or the start and end time of their unpaid breaks, Administrative Employees regularly would submit the default eight hours provided by WorkBrain. (Bergeron Decl. ¶ 6, Dkt. 38; Ricker Dep. 21:6-23:7; Fleischmann Dep. 94:4-92:23; Raml Decl. ¶ 6, Dkt. 41.) In fact, the Administrative Employees were required to submit only a total number of hours worked each day which Kohler called the elapsed time; not the actual start and end time of each workday. (Karstaedt Decl. ¶ 3(f), Dkt. 52.) Specifically, Kohler's WorkBrain training materials instructs Kohler's employees not to make changes to the schedule hours or the start and end time of each day. (Ex. 1 p. 38 of Karstaedt Decl. ¶ 3(b), Dkt. 52-1.) When more than eight hours are recorded in the elapsed time, the start and end time fields are not changed. (*See* Ex. 1 p. 83 of Karstaedt Decl. ¶ 3(b), Dkt. 52-1.) Kohler compensated the Administrative Employees based on the elapsed time in WorkBrain rather than a calculation based on the actual start and end time of the Administrative Employees' workday. (Karstaedt Decl. ¶¶ 3(f)-(g), Dkt. 52.) Each of these features of WorkBrain fostered an environment or culture at Kohler where off-the-clock work was not only acceptable, but the norm among the hourly Administrative Employees. There was not a sufficient emphasis placed by Kohler on capturing all the time employees worked each workday.

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 6 of 25   Document 75

## II.   BECAUSE WORKBRAIN DID NOT PLACE AN EMPHASIS ON ACCURATE RECORDING OF HOURS WORKED AND BECAUSE KOHLER WAS CUTTING BACK ON LABOR HOURS, EMPLOYEES WORKED OFF-THE-CLOCK TO KEEP UP.

Whether the work performed was part of a comp time scheme, performed before or after the normal eight hour day, or performed while working through unpaid lunch breaks - it is all work off-the-clock which must be compensated by Kohler.  Plaintiff has alleged that she and other Administrative Employees were instructed by Kohler that recording overtime was no longer allowed.  (Compl. ¶¶20-21, Dkt. 1; Vang Dep. pp. 88-90; Bergeron Decl. ¶ 8, Dkt. 38; Ricker Decl. ¶ 7, Dkt. 39; Yang Decl. ¶ 9, Dkt. 40; Raml Decl. ¶ 8, Dkt. 41; Vang Dep. 89:24-90:3, 106:14-15; Bergeron Dep. 43:11-24; Ricker Dep. 14:20-15:15, 24:8-19; Fleischmann Dep. 42:22-43:9.)  However, when this happened, these employees' workloads did not change.  (Yang Decl. ¶ 9, Dkt. 40; Bergeron Decl ¶8, Dkt. 38; Ricker Decl. ¶ 7, Dkt. 39.)  To deal with the conflicting policies – no recording of overtime, but still having to get work done – Plaintiff and other Administrative Employees worked in excess of their regularly scheduled workdays (pre and post-shift) with the knowledge of their supervisors.  (Compl. ¶¶ 13,14,24,25; Dkt. 1.; Vang Dep. pp. 103-104; Yang Decl. ¶¶ 11-12, Dkt. 40; Ricker Decl. ¶ 11, Dkt. 39; Bergeron Decl. ¶ 11, Dkt. 38; Raml Decl. ¶¶ 10-11, Dkt. 41.)

Second, Plaintiff alleges that Kohler utilized a "compensatory time" or "comp time" scheme whereby Plaintiff and other Administrative Employees were not compensated for hours worked in excess of forty (40) in a workweek but rather were told that they would be allowed to "comp" the hours during a future workweek.  (Compl. ¶¶ 14, 27-28; Dkt. 1; Yang Decl. ¶¶ 13-15, Dkt. 40; Bergeron Decl ¶¶ 12-14, Dkt. 38; Ricker Decl. ¶¶ 12-14, Dkt. 39; R Raml Decl. ¶¶ 12-14, Dkt. 41;.)

Third, Plaintiff has similarly alleged that on many occasions she and other Administrative Employees were required to work through all or part of their one-hour unpaid lunch break without receiving compensation for the time worked during the "break." (Compl. ¶23; Dkt. 1.; Yang Decl. ¶¶ 7-8, Dkt. 40; Bergeron Decl. ¶ 7, Dkt. 38; Ricker Decl. ¶ 6, Dkt. 39; Raml Decl. ¶ 7, Dkt. 41;.) Kohler's payroll keeping system, WorkBrain, automatically deducts a one hour unpaid lunch from employees' payroll records regardless of whether the Administrative Employee worked though part or all of the particular unpaid break. (Bergeron Decl. ¶ 5, Dkt. 38; Ricker Decl. ¶ 8, Dkt. 39; Yang Decl. ¶ 5, Dkt. 40; Raml Decl. ¶ 7, Dkt. 41.)

Although there may be some differences in how each supervisor suffered or permitted their Administrative Employees to work off-the-clock, the end result is the same – Administrative Employees working beyond the number of hours recorded in WorkBrain without being fully compensated for their time.

## ARGUMENT

### I. VANG HAS ALLEGED THAT KOHLER'S POLICIES UNIFORMLY VIOLATE WISCONSIN LAW

A motion for class certification does not reach the merits of liability against the defendant, but rather focuses on the standards set for the Fed. R. Civ. P. 23. Courts should not consider the merits of the plaintiff's case in deciding whether the case can be maintained as a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Courts may look past the pleadings in order to determine whether a plaintiff's case meets the technical requirements of Rule 23, but a motion for class certification is not the appropriate place to resolve substantive issues of liability unless they overlap with issues raised by Rule 23(a) and Rule 23(b). *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). However, it is significant that the plaintiff has made allegations that the class was commonly subjected to an illegal practice –

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 8 of 25   Document 75

the permitting of employees' off-the-clock work. "A court may not say something like 'let's resolve the merits first and worry about the class later.'" *Id.*

Under Wisconsin law, an employee "must be paid for all time spent in 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business.'" Wis. Admin. Code § DWD 272.12(1)(a)1. Moreover, an employee's "workday may thus be longer than the employee's scheduled shift, hours, tour of duty…" because the employee's workday must include the time from when an employee commences his/her principle activity through when he/she ceases such principle activity. Wis. Admin. Code § DWD 272.12(1)(a)2. Importantly,

> [w]ork not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. They may be a pieceworker, they may desire to finish an assigned task or they may wish to correct errors, past work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that they are continuing to work and the time is working time.
> Wis. Admin. Code § DWD 272.12(2)(a)1.

The Administrative Code goes on to state:

> [i]n all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.
> Wis. Admin. Code § DWD 272.12(2)(a)3.

Not only does an employer have to pay for work not requested, Employers must pay employees for "on duty meal periods" which are counted as "work time." Wis. Admin. Code DWD § 272.04(1)(c). An "on duty" meal period is defined as one where the employee is not free to leave the premises of the employer. *Id.* Further, an employee also is considered "on duty" if the employer does not provide at least one half hour free from work. *Id.* The employee

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 9 of 25   Document 75

must be compensated unless he has been "completely relieved from duty for the purpose of eating regular meals." Wis. Admin. Code. DWD § 272.12(2)(c)(2). The employee is not relieved if she is permitted to perform <u>any</u> duties, whether active or inactive, while eating. *Id*. (emphasis added).

To ensure that employees are properly paid for all hours they work and to avoid cases like the one at hand, Wisconsin law requires employers like Kohler maintain certain records. *See* Wis. Admin. Code § DWD 272.11. These records include the "time of beginning and ending of work each day" and "time of beginning and ending of meal periods … when such meal periods are to be deducted from work time." Wis. Admin. Code §§ DWD 272.11(1)(d)-(e).

Plaintiff has identified three circumstances in which Kohler has allowed its Administrative Employees to work off-the-clock without full and proper compensation. Because Kohler's use of WorkBrain did not record the time of the beginning and ending of each workday and the beginning and ending of each unpaid meal period, WorkBrain facilitated Kohler's culture of off-the-clock work. Moreover, Kohler, through their managers, suffered or permitted their employees to work off-the-clock through utilizing a comp time system, through working before and after normal hours of work and by working through lunches. Kohler "cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough." Wis. Admin. Code § DWD 272.12(2)(a)3. Kohler had the power to enforce a rule against such off-the-clock work, but failed to do so. *Id*.

## II. VANG HAS MET THE FED. R. CIV. P. 23 STANDARDS FOR CLASS CERTIFICATION

The facts support class certification pursuant to Fed. R. Civ. P. 23. The trial court has the sound discretion to determine whether to certify a class action. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). Class certification under Rule 23 requires a two-step analysis. *Rosario v.*

*Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992); *Temme v. Bemis Co.*, 2009 U.S. Dist. LEXIS 49894, *4-5 (E.D. Wis. May 28, 2009); *Bzdawka v. Milwaukee Cnty.*, 238 F.R.D. 469, 472 (E.D.Wis. 2006).

First, the class must satisfy the requirements of Rule 23(a), and second, the class must satisfy one of the three subdivisions of Rule 23(b). Fed. R. Civ. P. Rule 23. This Court has also recognized two additional implicit requirements for Rule 23 class certification, including standing and a clearly defined class. *Bzdawka*, 238 F.R.D. at 472. Because the implicit and explicit requirements of Rule 23 are met in this case, class certification should be granted.

### A. The Implicit Requirements of Fed. R. Civ. P. 23 are Met Because the Class Representative Has Standing and is a Member of the Precise, Objective and Ascertainable Class.

The two threshold requirements for class certification are met in this case. First, the named class representatives must have standing in that he is a member of the class he proposes to represent. *Id.* Second, the definition of the proposed class must be "precise enough to enable the court to determine whether at any given time a particular individual is or is not a member of the class. *Id.* at 474.

To have standing, Vang "must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele*, 149 F.3d at 592-593. Vang, as the named plaintiff, has standing in this matter. Vang worked for Kohler as an administrative employee from around May 2003 through October 2007. (Compl. ¶ 16, Dkt. 1.) Like all members of the putative class, Vang followed Kohler's uniform policy that she use WorkBrain to record her hours. (Compl. ¶ 16, Dkt. 1; Karstaedt Decl. ¶ 3(a), Dkt. 52.) When Vang recorded her time on WorkBrain it defaulted to an eight hour workday with an unpaid hour automatically deducted for her lunch period as did other members of the putative

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 11 of 25   Document 75

class. (Compl. ¶ 19.) Moreover, WorkBrain did not maintain accurate records of its Vang's beginning and ending of work each day, nor the beginning and ending of any unpaid break. (Compl. ¶ 19.) Vang was suffered or permitted to work off-the-clock under Kohler's corporate culture. (Compl. ¶¶ 17, 20-28.)

Not only are Vang's allegations with regard to off-the-clock work the same as other putative class members, the class definition is ascertainable such that it creates a class consisting of all individuals who, by virtue of Kohler's policies, are likely to be subjected to the illegal conduct. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir. 1977) (a class that satisfies all of the other requirements of Rule 23 will not be rejected as indefinite when its contours are defined by the defendants' own conduct). The proposed definition for the Rule 23 class is as follows:

> All persons who are or have been employed by Kohler as an Administrative Assistant I, Administrative Assistant II, Area Associate I, Area Associate II, Secretary and Senior Secretary in Wisconsin, at any time from September 2, 2007 through the final disposition of this case, who have worked without being compensated for each hour worked under a "comp time" or "compensatory time" scheme and/or by following a policy not allowing employees to record every hour worked including working through unpaid lunch breaks.
> (*See* Dkt. 57; Dkt. 69.)

The proposed Rule 23 class definition is the same as definition of the FLSA collective class which was conditionally certified by the Court on November 29, 2010 and later clarified on February 2, 2011, with the exception of the applicable statutory period.[1] (Dkt. 57; Dkt. 69.) Kohler was able to identify the individuals who fell within the collective class definition and to provide to Plaintiffs' counsel the identity of those individuals. (Johnson Decl. ¶ 3.) The

---

[1] To include the Court's February 2, 2011 Order, a more precise definition - Administrative Assistant I, Administrative Assistant II, Area Associate I, Area Associate II, Secretary and Senior Secretary – was substituted for Administrative Employee.

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 12 of 25   Document 75

proposed Rule 23 class is equally ascertainable. Moreover, it is objective and precise. The class definition is based on the putative class members' dates of employment and job titles held – all information in Kohler's possession. Therefore, the implicit requirements of Rule 23 are met as Vang has standing to represent the proposed Rule 23 class and the proposed class is objective, precise and ascertainable.

### B. Vang Has Satisfied the Fed. R. Civ. P. 23(a) Requirements.

The Fed. R. Civ. P. 23(a) requirements have been met in this case. Under Rule 23(a), class certification is appropriate when: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The class claims in this case meet all of these requirements.

### i. The Class Members are so numerous that joinder is impossible.

Class certification is appropriate when, as in this case, the number of members in the proposed class is so large as to make joinder "impracticable." Fed. R. Civ. P. 23(a)(1); *Carnegie v. Household Int'l, Inc.*, 376 F. 3d 656, 663-64 (7th Cir. 2004). To be impracticable, joinder need not be impossible but only difficult or inconvenient. *Great Neck Capital Appreciation Investment Partnership, L.P. v. Pricewaterhouse Coopers, L.L.P.*, 212 F.R.D. 400, 407 (E.D.Wis. 2002). In general, for classes numbering at least 40 members, joinder is considered impracticable. *Blarek v. Encore Receivable Management, Inc.*, 244 F.R.D. 525, 527 (E.D.Wis. 2007).

During the discovery process and in response to the Courts February 1, 2011 Order (Dkt. 69), Kohler identified and produced a list of one hundred and forty names. (Johnson Decl. ¶ 3.) This number of putative class members is sufficient to establish numerosity as joinder of one

hundred and forty class members would be impracticable in light of judicial resources. Further, the financial burdens of individualized litigation outweigh the potential rewards for litigants. For these reasons, the proposed class meets numerosity requirements of Rule 23(a)(1).

### ii. There are questions of law or fact common to the class.

Second, Rule 23(a) requires a finding that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Generally, the presence of a single common legal or factual question is sufficient. *Clarke v. Ford Motor Co.*, 220 F.R.D. 568, 578 (E.D. Wis. 2004) (stating that the commonality requirement is not demanding because it may be satisfied by a single common issue). Rule 23(a)(2) looks to whether the defendant's conduct is common to class members, rather than to whether the result of the conduct is uniform among class members. *Bzdawka*, 238 F.R.D. at 475 (*citing Rosario*, at 1018). "The fact that there is some factual variation among the class grievances will not defeat a class action. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosaria*, 963 F.2d at 1018-19 (internal citation omitted).

Vang and the putative class members have several issues of law and fact in common. Common issues of law include, but are not limited to:

- Whether Kohler violated the requirements of Wis. Stat. § 104.02, Wis. Admin. Code § DWD 272.03 and Wis. Code. § DWD 274.03 by failing to pay wages and overtime premium wages to Vang and members of the putative class for each hour worked;

- Whether Kohler violated the requirements of Wis. Code. § DWD 272.04(1) and Wis. Code. § DWD 274.02(3) by failing to pay Vang and members of the putative class for on-duty meal periods;

- Whether Kohler violated the requirements of Wis. Admin. Code § DWD 272.12(2) by failing to pay Vang and putative class members for meal periods which did not constitute bona fide meal periods.

- Whether Kohler violated the requirements of Wis. Admin. Code § DWD 272.12(1) by failing to pay Vang and putative class members for time spent in

"physical or mental exertion" as required by and primarily for the benefit of the employer; and

- Whether Kohler violated the requirements of Wis. Admin. Code. §§ DWD 272.11(1)(d)-(e) by failing to accurately record Vang and putative class members' "[t]ime of beginning and ending of work each day" and the "[t]ime of beginning and ending of meal periods."

Issues of fact common to the class include, but are not limited to:

- Whether Kohler's WorkBrain payroll records accurately reflect the hours worked by Vang and the putative class;

- Whether Kohler's suffered or permitted Vang and the putative class members to work off-the-clock by using a comp time system;

- Whether Kohler's suffered or permitted Vang and the putative class members to work off-the-clock by allowing employees to work through their unpaid lunch break; and

- Whether Kohler's suffered or permitted Vang and the putative class members to work off-the-clock by allowing employees to before and after their normal shift without compensation.

The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class. Therefore, this requirement "is easily met in most cases." 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 3:10 at 272, n.9 (4th ed. 2002). Furthermore, "a finding of commonality is not precluded by the possibility that the proof required to demonstrate injury might be highly individualized." *Plaintiffs Class v. Credit Lyonnais Rouse, Ltd. (In re Sumitomo Copper Litig.)*, 262 F.3d 134, 141 (2d Cir. N.Y. 2001). Here, the commonality requirement has been met because the claims of all proposed class members derive from the same policies and procedures, and are based on the same legal theories.

Kohler required Vang and the putative class to utilize the WorkBrain system with the same instruction that the employees were not to record the actual hours worked, only the elapsed time. Therefore, Vang and the putative class were instructed to not record the actual start and

end time of each workday, and the actual start and end time of any unpaid break. Vang and the putative class indicate that they were instructed that overtime was no longer allowed, but their workloads did not change. Vang and the putative class each allege that these policies operate to foster a culture where Kohler suffered or permitted them to perform various kinds of off-the-clock work. Vang and the putative class members issues of fact and law are not only common, they are unified.

### iii. The claims of the representative party are typical of the claims of the class.

The Fed. R. Civ. P. 23(a)(3) typicality standard has been articulated as follows:

> "[Typicality] primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."

*Blarek*, 244 F.R.D. at 528 (*citing De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Moreover, "[t]he typicality requirement may be satisfied even if there are factual distinctions between claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *Id*.

Courts determine typicality based on the "company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). Since the claims need only to share "the same essential characteristics" and need not be identical, the typicality requirement is not highly demanding. *Clarke*, 220 F.R.D. at 579. "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id*.

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 16 of 25   Document 75

As previously explained, Vang's claims are not only typical of the claims of the class, they are the same. Moreover, they arise out of the same nucleus of Kohler policies and procedures.

### iv. The class representative will fairly and adequately protect the interests of the class.

In determining whether a plaintiff will provide adequate representation, courts consider the adequacy of the representation provided by the class representative and of class counsel. Blarek, 244 F.R.D. at 529. The court must ensure that, "there is no inconsistency between the named parties and the class they represent." *Id.* (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)). Additionally, class counsel must be qualified to conduct the litigation. *Id.*

Vang is an adequate representative of the class because she suffered the same injuries as the putative class members. As previously illustrated, Kohler required Vang to us the WorkBrain system which failed to keep accurate records of the hours worked. Moreover, she performed the same off-the-clock work similar to that of the putative class members. There is no divergence of interests between the proposed class representative and the interest of the class as a whole. Vang is prepared to prosecute this suit on behalf of the class.

Further, Plaintiff's counsel should be appointed class counsel pursuant to Rule 23(g). Plaintiff's counsel is experienced in complex wage and hour litigation and has served as counsel in numerous multi-plaintiff actions before Wisconsin courts, including co-counseling a class action overtime case working closely with lead counsel. (Johnson Decl. ¶ 4.) Most recently, Plaintiff's counsel settled a class/collective action on behalf of in excess of 1,000 employees. (Johnson Decl. ¶ 4.) Each of the three attorneys representing the class has the depth and breadth of experience necessary to adequately represent the class in this matter. (Johnson Decl. ¶ 5.) Nola Hitchcock Cross has represented plaintiffs in almost every type of employment action over

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 17 of 25   Document 75

the past thirty years, including class action litigation.  (Johnson Decl. ¶ 5.)  The class

representative is fully qualified and committed to full prosecution of this case on behalf of the

class and Plaintiff's counsel will fairly and adequately represent the class.

### C.  Vang Has Satisfied the Fed. R. Civ. P. 23(b) Requirements.

In addition to satisfying the prerequisites to class certification under Fed. R. Civ. P. 23(a),

the potential class must also satisfy at least one provision of Fed. R. Civ. P. 23(b). *Blarek*, 244

F.R.D. at 530 (*citing Rosario*, 963 F.2d at 1017). Where plaintiffs are seeking monetary damages

rather than solely injunctive relief, the class certification inquiry focuses on Fed. R. Civ. P.

23(b)(3). Subsection (b)(3) requires that plaintiffs show (i) "questions of law or fact common to

members of the class predominate over any questions affecting only individual members" and

(ii) "a class action is superior to other available methods for the fair and efficient adjudication of

the controversy."  *Id*.

The Supreme Court of the United States has held that a class should be certified when "a

class action would achieve economies of time, effort, and expense, and promote ... uniformity of

decision as to persons similarly situated, without sacrificing procedural fairness or bringing about

other undesirable results." *Amchem,* 521 U.S. at 615 (*citing* Fed. R. Civ. P. 23 Advisory

Committee Notes); *see also Mejdrech v. Met-Coil Systems Corp.,* 319 F.3d 910, 911 (7th

Cir.2003)("[C]lass action treatment is appropriate and permitted by Rule 23 when the judicial

economy from consolidation of separate claims outweighs any concern with possible

inaccuracies from their being lumped together in a single proceeding for decision by a single

judge or jury.")

### i. Questions of law or fact common to the entire class predominate over individual issues

To meet the predominance requirement of Fed. R. Civ. P. 23(b)(3), the common question(s) need not be dispositive of the entire action. A "single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 620 (W.D. Wis. 2003) (*quoting* Newburg & Conte, *Newberg on Class Actions* § 4.25, at 4-84 (3d ed.1992)). The basic question is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

When a class challenges uniform policies, the validity of those policies predominate over individual issues, and class certification is appropriate. *Blihovde*, 219 F.R.D. at 620. Here, Vang challenges Kohler's time keeping policies and its culture of permitting off-the-clock work. The putative class members each worked under the same policies which Plaintiff alleges violated Wisconsin law.

Courts in Wisconsin and throughout the country have found that, where off-the-clock work is alleged, the issue of the legality of that policy predominates over any individual issues affecting class member. In one such case, *Kasten v. Saint-Gobain Perf. Plastics Corp.*, the court examined the predominance standard as it applied to a meal and rest break challenge under Wisconsin law. 556 F. Supp.2d 941(W.D. Wis. 2008). In *Kasten*, the plaintiffs challenged the validity of a policy whereby the Kronos time system automatically deducted half an hour from each employee's daily wages for a meal period, despite the fact that these employee were required to don and doff protective clothing during these unpaid meal periods. *Id.* at 949-950. The central legal question concerning the meal period class in *Kasten* was whether the donning and doffing of clothing during meal periods was "work" within the meaning of Wis. Admin

Case 2:09-cv-00842-WEC   Filed 05/10/11   Page 19 of 25   Document 75

Code § 272.12(1). *Id.* at 952. The court held that the legal issue of whether the donning and doffing activities were "work" predominated over any potential individual variances in time spent donning and doffing. *Id.* at 961. Quoting *Blihovde*, the court held that where the validly of a policy is in question, the validity of that policy predominates over individual issues. *Id.* at 961 (*citing Blihovde*, 219 F.R.D. at 620).

The *Kasten* decision is consistent with rulings throughout the country, which have found in similar cases that common issues related to the legality of the policy predominate over individual inquiry. *See e.g. Eldred v. Comforce Corp.*, 2010 U.S. Dist. LEXIS 18260, *54 (N.D.N.Y Mar. 2, 2010) (in regards to an employer's unauthorized wage deductions, "[t]he predominant question raised [was] whether such a policy existed, and not whether any individual suffered its consequences on a particular job"); *Mendez v. Radec Corp.*, 232 F.R.D. 78, 91-94 (W.D.N.Y. 2005) (questions relating to an employer's automatic meal deduction policy predominated and satisfied the Rule 23(b)(3) requirements; individualized damage issues, such as whether a particular class member had spent the bulk of his lunch break working, had traveled to an out-of- town job site during normal working hours, etc. are not bases for finding predominance requirements not met); *Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224, at * 23-30 (N.D. Cal. Aug. 29, 2007) (the predominant question in a case involving off-the-clock inspections was "whether [the employer's] policy result[ed] in unlawful undercompensation;" class certification is not defeated by unresolved legal and factual issues surrounding the nature and implementation of the policy itself).

In this case, as discussed in Section I, *supra*, Wisconsin law requires that an employer keep certain records and pay their employees for all hours worked. Specifically, the Administrative Code defines what hours count as hours worked. Kohler's policies regarding

WorkBrain, the culture of permitting off-the-clock work, and whether Kohler suffered or permitted its Administrative Employees to work off the clock predominate over any other claims in this matter.

Further, whether these policies, as applied to the class, violate Wisconsin law are questions which are established through generalized common proof and, because those answers determine liability, the common questions predominate over individual issues. *See Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) (need for individual damages determinations does not, by itself, preclude finding that class action is maintainable on predominance and superiority grounds.); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("factual variations among class members' grievances do not defeat a class action.").

The predominance requirement is met in this case because Vang challenges the legality of Kohler's uniform policy regarding its use of WorkBrain and its culture of allowing employees to work off-the-clock under Wisconsin law. Whether the Kohler's policies and culture, in practice, indeed violates Wisconsin law is the central issue to this case and is one that can be answered through common proof.

### ii. A class action is superior to other methods available for fair and efficient adjudication

A class action is vastly superior to other methods available for adjudication of the present dispute. Rule 23(b)(3)'s dominant purpose is "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all." *Amchem*, 521 U.S. at 617. In evaluating this requirement under Rule 23(b)(3)(B), courts consider the following: (1) the interest of class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the

desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class. Fed. R. Civ. P. 23(b)(3).

As demonstrated above, the central factual and legal questions in this case can, and should, be resolved for all members of the class in a single adjudication. The superiority requirement of Rule 23(b)(3) asks whether it makes sense to resolve any non-common, non-predominant issues together with the common predominant issues in one class action. It makes sense to do so in this case because the resolution of any remaining questions, even if they involve individualized questions with respect to damages, are easily manageable and do not defeat the efficiencies gained by resolving the core common questions on a representative basis.

A class action is superior to alternative methods of adjudication because the alternative would involve a multitude of relatively small individual actions. Such actions would duplicate this proceeding and amount to a colossal waste of resources for all parties and this Court. It would be absurd to have so many separate actions concurrently resolving the same questions, which more efficiently could be resolved in the present case. Additionally, resolving the present issues in one action would avoid the possibility of "conflicting legal and factual findings by a panoply of juries." *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 2003 U.S. Dist. LEXIS 25717, at *23 (D. Or. May 19, 2003). The four factors enumerated in Rule 23(b)(3) for analyzing whether a class action will be superior to individual actions also favor certification of all the issues in this action.

The first factor considered is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A). In cases such as this, where an employer's wage and hour policy affects a large number of workers and the individual damages are relatively low, individual actions are highly unlikely to occur. Such actions are cost-

prohibitive because the litigation costs will likely far outweigh the potential individual recovery. Further, many of the workers may not be aware that they may be entitled to additional compensation. Finally, individual employees may choose not to bring individual actions out of fear of retaliation.

The second factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed.R.Civ.P. 23(b)(3)(B). Here, no putative class member has filed a rival action.

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). This forum is clearly appropriate as all the alleged violations occurred within this Court's jurisdiction.

The fourth factor is "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Denial of class certification for management reasons is disfavored and "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable should be the exception rather than the rule." *In re Visa Check/Mastermoney Antitrust Litig. v. Visa*, 280 F.3d 124, 140 (2d Cir. 2001). This is particularly true here where the only remaining issues would relate to damages and would be easily managed in the context of a class action. Indeed, other circuits have explicitly recognized that individual questions with respect to damages do not defeat class action treatment. *In re Visa Check*, 280 F.3d at 139. In addition, courts have routinely rejected arguments concerning the unmanageability of "individualized" defenses in the context of off the- clock" claims citing the use of representative testimony provided for in collective actions. *See, e.g., Falcon v. StarbucksCorp.*, 580 F. Supp. 2d 528, 540 (S.D. Tex. 2008).

Furthermore, there are numerous management tools available to this Court that would enable it to adeptly deal with any management concerns with respect to damages. *See In re Visa Check,* 280 F.3d at 140-141 (e.g., bifurcating liability and damage trials with the same or different juries; appointing a magistrate judge or special master to preside over individual damages proceedings; decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; creating subclasses; or altering or amending the class); *Robinson v. Metro- North Commuter R.R. Co.,* 267 F.3d 147, 167-68 (2d Cir. 2001), *quoting Edward F. Sherman, Class Actions and Duplicative Litigation,* 62 IND. L.J. 507, 516 (1987) ("'[a] class action should not be found unmanageable without [first] exploring the procedural devices available for bringing it in line. These include subclassing and trial of subclass issues separately, bifurcating liability and damages, ... [and] appointing a special master for difficult evidentiary matters'"). A class action is superior in this case because the main issues can be determined on a representative basis and any individual issues Kohler may cite are easily manageable through various tools within the courts tool box.

### III. VANG'S PROPOSED FORM AND MANNER OF SERVICE OF NOTICE ARE APPROPRIATE

For any class certified under Fed. R. Civ. P. 23(b), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

The Plaintiff proposes that, should the court deem the instant action proper for class certification, Plaintiff will send, by first class mail, the notice attached as Exhibit A to this brief filed in support of this motion. The Plaintiff has fashioned her notice on notices approved in similar cases, and believes its substance is consistent with the requirements of Fed. R. Civ. P. 23(c)(2)(B). Said notice identifies the nature of this action, the definition of the class certified,

Case 2:09-cv-00842-WEC    Filed 05/10/11    Page 24 of 25    Document 75

the class claims and defenses, that class members may enter an appearance through an attorney, that the court will exclude from the class any member who requests exclusion, the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

**CONCLUSION**

Because Vang challenges the legitimacy of Kohler's compensation policies and practices which uniformly impacted members of the putative class, the legitimacy of that policy and whether it operates to violate Wisconsin law is a matter of common proof that predominates over any individual issues in this case. Moreover, as individual claims of the putative class members are small and these individuals may otherwise be unable ot pursue their claims, a class action is superior mechanism in this case. As provided above, Vang has met the requirements of Fed. R. Civ. P. 23 and therefore requests that the putative class be certified and she be named class representative.

Respectfully submitted this 10th day of May, 2011.

**CROSS LAW FIRM, S.C.**
*Attorneys for Plaintiff*

 **s/LARRY JOHNSON**
Larry A. Johnson
ljohnson@crosslawfirm.com
Noah Reinstein
nreinstein@crosslawfirm.com
Nola J. Hitchcock Cross
njhcross@crosslawfirm.com
The Lawyers Building
845 N. 11th Street
Milwaukee, WI  53233
414-224-0000