## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| Jennifer Vang, <br> on behalf of herself and all <br> others similarly situated, <br><br>               Plaintiffs, <br><br> v. <br><br> Kohler Co., <br> a Domestic Corporation, <br><br>            Defendant. | Case No. 2:09-cv-00842-WEC <br><br><br> **PLAINTIFF'S BRIEF IN REPLY IN SUPPORT OF HER MOTION FOR RULE 23 CLASS CERTIFICATION** |

## FACTUAL BACKGROUND

### A. Kohler policies are in contradiction with Wisconsin law.

Kohler states that its hourly administrative assistants "are responsible for accurately entering the actual hours they work, including overtime, in WorkBrain…." (Def.'s Br. at 2.) This position is at the heart of Plaintiff's allegation and is in contradiction of the legal requirements of Wisconsin law. Plaintiff, in her moving brief, explained that Wisconsin law requires more than the mere promulgation of a rule by Kohler regarding accurate recording of hours worked and that it is the duty of Kohler to make sure that its employees don't work off the clock. *See* Wis. Admin. Code § DWD 272.12(2)(a)3. Whether or not Kohler's policy to put the burden on its employees to maintain accurate records is a question that is common to all members of the class. Kohler policy clearly places the burden of maintaining accurate records on the employees. (Def.'s Br. at 3.)

### B. Kohler's employees worked off-the-clock despite Kohler's records.

Each former employee who has been deposed thus far has explained that while working for Kohler, they worked off the clock without receiving full compensation for the hours they worked. Kohler focuses solely on its position that Kohler's "official" policies require employees to be paid for all hours worked and that Kohler attempts to shift its legal burden to keep accurate records to the employees.

When Ms. Bergeron worked overtime, she did not record it. Bergeron Dep. 45:16-17. There were times that Ms. Bergeron would record that she took a lunch, but did not because she had to get her work done – she had to reconcile her hours worked with the no overtime policy. Bergeron Dep. 48:15-21; 50:18-51:2; 58:14-20. As Ms. Bergeron explained it, at the end of the week when she had to fill in her hours in WorkBrain, they had to come out to forty hours.

Bergeron Dep. 49:19-50:12. If Bergeron worked over forty, she could not record it because overtime was not allowed. Bergeron Dep. 49:19-50:12.

Likewise, Ms. Yang regularly worked either through her unpaid lunch break, or would stay beyond her scheduled shift, but would submit forty hours regardless of what she actually worked. Yang Dep. 30:1-3. Ms. Yang explained that she did not record more hours because she was not allowed overtime – because of the workload and the culture at Kohler, she had to do what was needed to get her job done. Yang Dep. 48:5-12. Ms. Yang would normally enter into WorkBrain would be the eight hours she was scheduled to work. Yang Dep. 44:25-45:3.

Ms. Ricker also worked off the clock by working without inputting all her hours into WorkBrain. Ms. Ricker was scheduled for a one hour unpaid lunch every day which was scheduled in WorkBrain. Ricker Dep. 9:21-23; 23:22-24. However, Ms. Ricker typically took no lunch. Ricker Dep. 24:7. Despite not taking a lunch break, Ms. Ricker would not change the WorkBrain records regarding an unpaid lunch break because her supervisor instructed her that she was not allowed to work overtime. Ricker Dep. 24:8-19.

Ms. Fleischmann's supervisor told her whole department that Kohler was in a fiscal crunch and that the hourly administrative employees needed to stop putting in for overtime. Fleischmann Dep. 57:4-10. The exact wording of each supervisor's instructions – no recording overtime vs. no working overtime - is immaterial. Rather, the effect of those policies is what matters – the employees worked off the clock.

### C. Kohler's WorkBrain system fostered the corporate culture at Kohler.

To be successful at trial, Plaintiff's do not have to establish that they received a specific instruction to not record their hours worked over forty, rather it looks to whether Kohler suffered or permitted its employees to work and whether Kohler saw to it that no unwanted off the clock work was being performed. To help employers avoid situations where their employees claim

that they worked off the clock without compensation, Wisconsin law requires employers maintain accurate records. WorkBrain's own guidelines instruct employees that they are not to follow Wisconsin law by not recording the start and end time of each workday.

Employees were dedicated to get their job done. They did not want to lose job. To work with conflicting policy that they were not allowed to work overtime, or not able to record overtime, but still had to get their work done, they did not fully report their hours worked. Vang Dep. 103-104; Yang Decl. ¶ 11-12, Dkt. 40; Ricker Decl. ¶ 11, Dkt. 39; Bergeron Decl. ¶ 11, Dkt. 38; Raml Decl. ¶¶ 10-11, Dkt. 41.

i.      **Despite the employees' experience, the result is the same – off the clock work.**

Kohler's hourly administrative employees took different approaches to recording their hours in WorkBrain in order to deal with the conflicting no overtime policy and the pressures of getting their jobs done. Ms. Ricker kept her time in a planner throughout the week and at the end of the week, she would go into WorkBrain and fill in the time. Ricker Dep. 33:1-35:6. However, she would not record or transfer the entirety of her hours worked into WorkBrain. Ricker Dep. 35:6. Similarly, Ms. Bergeron maintained a scratch piece of paper on her deck and entered time at end of week. Bergeron Dep. 18:12-15. At end of week, Ms. Bergeron would staple or tape the scratch piece of paper to a WorkBrain print out which she keep. Bergeron Dep. 22:16-19. As Ms. Bergeron explained it, at the end of the week when she had to fill in her hours in WorkBrain, they had to come out to forty hours. Bergeron Dep. 49:19-50:12. If Bergeron worked over forty, she could not record it because overtime was not allowed. Bergeron Dep. 49:19-50:12. Ms. Fleischmann kept her hours in a Microsoft Outlook calendar throughout the week and would reconcile them later. Fleischmann Dep. 24:21-24. Because the employees filled in the hours at the end of the week, they were able to reconcile the hours worked and squeeze the records so that WorkBrain said forty hours.

### ii.  Kohler's WorkBrain system automatically included/deducted an unpaid lunch period.

Regardless of the words used to describe the practice, Kohler's WorkBrain system included an unpaid lunch break in each hourly administrative employee's work hours each day. WorkBrain  assumes employees work from eight to five every day – which is actually nine hours.  Yang Dep. 45:9-21.  However it is termed, WorkBrain assumes that an employee, in those nine hours, had an unpaid lunch.  Yang Dep 45:20-46:8.

### iii.  Kohler's WorkBrain system did not record start and stop times.

Kohler does not dispute that WorkBrain fails to record the start and end time of employees workdays and unpaid lunches.  (Def. Br. at 3-4.)

### iv.  Kohler's did not emphasize accurate reporting of time, but rather allowed employees to record whatever hours regardless of the hours actually worked.

Kohler's policy was to leave the recorded hours at 8:00 to 5:00.  Ricker Dep.  20:5-11. This was the default setting.  Ricker Dep. 20:18.  Ms. Bergeron was told not to change things in WorkBrain.  Bergeron Dep. 41:24-25.  Not requiring its hourly employees to record the actual start and end times, to change the schedule so that it accurately reflected the hours worked or even the hours scheduled, opened the door to employees not recording their hours accurately.

### ARGUMENT

### I.  The Court's focus should be on Kohler, not the employees' experiences.

Plaintiff, in her moving brief, explained that Wisconsin law requires more than the mere promulgation of a rule by Kohler regarding accurate recording of hours worked and ensuring that employees its employees do not work off the clock.  Kohler does not discuss this requirement whatsoever in its responsive brief.  Rather, Kohler repeatedly goes back to its "official" policies that require employees be paid accurately and that its employees not work off the clock.  If Kohler's policies are not followed, they are not worth the paper they are written on.  Moreover,

various policies run afoul of Wisconsin law and permitted a culture where hourly administrative

employees work off the clock and Kohler's supervisory employees turn a blind eye.

### A. Kohler's duty to maintain accurate records of its employees' hours of work is non-delegable despite Kohler's "official" policy.

The burden to ensure that payroll records are accurate and that employees do not work

off the clock is squarely upon Kohler – any attempt to shift this burden ignores the directives of

Wisconsin law. Wis. Admin. Code DWD §§272.11 and 274.06 require Kohler to accurately

maintain the hours of employment, beginning and end times of each work day and the beginning

and end times of each meal period. The plain language of the Administrative Code clearly does

not place the burden on the employee. Moreover, Kohler must pay an employee for "[w]ork not

requested but suffered or permitted" to be worked. Wis. Admin Code § DWD 272.12(2)(a)1. At

all times, "it is the duty of management to exercise its control and see that the work is not

performed if it does not want it to be performed." Wis. Admin. Code § DWD 272.12(2)(a)3.

Although Plaintiff's motion is brought under Wisconsin law, to the extent that the

FLSA's language is the same as Wisconsin's law, FLSA case law is instructive – particularly in

that the cases discuss the effect of an employer failing to keep accurate records. As is the case

under Wisconsin law, "an employer's duty under the FLSA to maintain accurate records of its

employees' hours is non-delegable." *Kuebel v. Black & Decker Inc.*, 2011 U.S. App. LEXIS

9448 *26 (2nd Cir. May 5, 2011). *Kuebel's* mandates should apply with equal force to claims

made under Wisconsin law as the recordkeeping requirements are nearly identical (compare Wis.

Admin Code DWD §§272.11, 274.06 with 29 U.S.C. §211(c)).

In *Kuebel,* the plaintiff failed to record all of his hours of work on timesheets based on

the directives of his supervisors. The Second Circuit explained that "the fact that an employee is

required to submit his own timesheets does not necessarily preclude him from invoking

*Anderson's* [just and reasonable inference of hours of work] standard where those records appear to be incomplete or inaccurate." *Id.* at *26-27 (citing *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1071 (N.D. Ill. 2005) (it is "clear that employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by employees."). "A contrary conclusion would undermine the remedial goals of the FLSA, as it would permit an employer to obligate its employees to record their own time, have its managers unofficially pressure them not to record overtime, and then, when an employee sues for unpaid overtime, assert that his claim fails because his timesheets do not show any overtime." *Kuebel v*, 2011 U.S. App. LEXIS 9448 *29-30. Kohler cannot shift the burden of keeping accurate record onto its employees. Kohler's continued insistence that the hourly administrative employees "are responsible for entering the actual hours they work, including overtime, in WorkBrain" is the position that got Kohler in trouble in the first place.

**B. Kohler casually dispenses with Wisconsin's record keeping laws.**

Wisconsin law clearly requires an employer to maintain accurate records of the actual start time and the actual end time of an employees work day along with unpaid breaks. Kohler, perhaps understanding that they failed to maintain proper records, argues that there should be no legal effect to their failure to follow Wisconsin law. Kohler accurately points out that Plaintiffs' do not have a private right of action for a failure to maintain records; nor has Plaintiff made such a claim. *See DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1034 (E.D. Wis. 2008). However, Kohler misses the point of Plaintiff's inferring Wisconsin law is irrelevant. (Def.'s Br. 3-4.) By allowing employees to only enter the elapsed time for the number of hours worked each day, rather than the actual start time and end time, <u>Kohler de-emphasized accurate record keeping</u>. If an employee is required to keep the exact start time, and exact end time of their workday, that employee would understand the importance of maintaining accurate records.

## C.  The resulting culture and Kohler fostered off the clock work

There is a legal effect of Kohler's lax approach to Wisconsin's laws is they contribute to Kohler's de-emphasis on maintaining exacting and accurate records of the hours each employee worked each day.  When this lax approach to following Wisconsin law is combined with layoffs, a fear of losing one's job, a no overtime rule without a change in workload, the result is perfect conditions for off the clock work – a culture that Kohler continues to defend despite this suit.

Despite Kohler's calling Plaintiff's allegations amorphous and inanimate, class claims based on culture have been certified.  In *Otuska v. Polo Ralph Lauren Corp* class certification was granted based upon the culture of defendant that discouraged the class from taking rest breaks that were required under California Law.  251 FRD 439 (N.D. Cal 2008).  Even though one of the named plaintiffs testified that she took her breaks and another testified that she only missed 25% of her breaks, the court found that,

> "the other representatives allege that they were forced or coerced to skip rest breaks as part of a culture … that discouraged the taking of rest breaks, and thus they meet the test for typicality. Although absent class members may have missed more or fewer rest breaks than the named plaintiffs, all were subjected to the same alleged policies with regard to rest breaks, and any individual differences in the number of breaks missed is a question that can be addressed if and when the amount of damages is determined."
> *Id* at 446.

*Otuska* is instructive as it presents a very similar scenario as the instant case.  In this case the culture of being coerced into not recording all hours worked is strikingly similar to the *Otuska* plaintiffs' claims of being coerced into not taking a rest break.  Just as in *Otuska* the putative class members may have varying degrees of unpaid work, but that does not change the fact that they were subject to Kohler's culture with regard to off the clock work.

## II.     Plaintiff has met the Rule 23 standards for class certification of this matter.

Plaintiff has not ignored the Supreme Court's position in *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). In *Falcon*, the Supreme Court held that the allegations in the complaint that discrimination in employment occurred "neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified." *Id.* at 157. The problem identified in *Falcon* was that the Plaintiff did not support his class allegations – rather he relied on the validity of his own complaint only. *Id.* Plaintiff in this matter has provided declarations and deposition testimony from other hourly administrative employees who establish commonality and typicality.

In interpreting *Falcon*, the Seventh Circuit explained that the "similarity of claims and situations must be demonstrated rather than assumed." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). As required by *Szabo*, Plaintiff has provided the Court with much more than simply allegations in her complaint. Moreover, the Seventh Circuit in *Szabo* struggled with a nationwide class because the laws of various states, which were the basis for the claims, differed state to state. *Id.* at 674. The Court went on to explain "[i]f any class treatment is appropriate, a class limited to a single state … would be more practical…." *Id.* at 677. The courts obvious issue was there was no commonality where the underlying law for the complaint differed state to state. Plaintiff limited her class to Wisconsin law where each employee worked.

### A. Plaintiff has satisfied the implicit requirements of Rule 23.

### i. Plaintiff is a representative member of the class.

Kohler's only argument that she is not a representative of the class arises out of some notion that because she was only worked for one month within the statute of limitations period, she cannot be a representative of the class. (Def.'s Br. at 17-18.) It cannot be so. Kohler cites *Harriston* for its proposition that Plaintiff is not a member of the class that she seeks to represent. (Def.'s Br. at 18.) To have standing to sue as a class representative, the plaintiff "must be part of

the class and 'possess the same interest and suffer the same injury' as the class members."
*Harriston* at 703 (internal citations omitted). *Harriston* went on to hold that the plaintiff did not
suffer the same injury as the class she purported to represent (all African Americans not
promoted to management positions) because she in fact had been promoted to a management
position. *Id* at 703-704. To the contrary, Vang alleged that during the time she was an hourly
administrative employee, like the employees who she seeks to represent, she was subject to the
same practices and policies of Kohler which allowed her to work off the clock without
compensation. As opposed to the plaintiff in *Harriston*, Vang suffered the exact same injury as
the class that she seeks to represent – not being paid for off the clock work.

Moreover, Kohler argues that Plaintiff is only a member of the proposed class for a
month and therefore she should be precluded from representing any Kohler employee regarding
events that occurred after her tenure. (Def.'s Br. at 18). It is not the amount of time that Plaintiff
was subject to Kohler's policies of denying her proper compensation, but rather whether Plaintiff
was subject to those policies. If Kohler's arguments were followed, then no former employee
would ever have the ability to be the class representative for current employees. Then an
employer could fire the complaining current employee, face the consequences of a single-
plaintiff retaliation claim and avoid a Rule 23 claim by saying the now-former employee cannot
adequately represent the current employees.

All Vang must do is, "make at least a threshold showing of standing in order to be [a]
member[] of the proposed class, adequately represent it, and have claims typical of potential
class members." *Rozema v. Marshfield Clinic*, 174 F.R.D. 425, 432 (W.D. Wis. 1997). Vang
has set forth a violation of Wisconsin law and has shown that she has allegedly suffered the same
injury as other class members; therefore she is a member of the class she seeks to represent.

### ii.  Plaintiff's class is precise, objective, and ascertainable.

Plaintiff's class is sufficiently precise, objective and ascertainable as Kohler has been ordered by the Court and able to produce a list of names within Plaintiff's class definition. If Kohler was able to provide a list, the definition of the Class is certainly precise, objective, and ascertainable. Kohler's citation to *Simer v. Rios*, stands for the proposition that it could be difficult to determine who is within the class where the class definition is based on an individual's state of mind. 661 F.2d 655, 669 (7th Cir. 1981). However, Plaintiff's class definition is not defined by employees' state of mind, but rather a concrete definition whose boundaries are the six positions, within the state of Wisconsin, for a specific time period. Unlike the case in *Simer*, defining who falls within Plaintiff's definition in this matter will not result in a large expenditure of valuable court time, or money. *Id*. Kohler has provided the class list previously and would simply have to update it pursuant to their records.

### B.  Plaintiff has satisfied the explicit Rule 23(a) requirements.

#### i.  The class members are so numerous that joinder is impossible.

Kohler readily admits that with 140 individuals on the class list, it would likely be impracticable to join them all. (Def.'s Br. at 20.) However, Kohler argues that it is speculation that each of the 140 individuals "were subject to the same facts and circumstances alleged by Plaintiff." (Def.'s Br. at 20.) However, there is no dispute that each employee in the class utilized WorkBrain which failed to keep accurate record and was a major component in fostering the culture at Kohler which deemphasized maintaining accurate records. Each employee worked at an hourly administrative employee, within a statutory time period, in Wisconsin, for the same employer, in one of six positions. Plaintiff's legal theory is predicated on the fact that Kohler suffered or permitted off the clock work and failed to maintain proper records of its employees' hours of work, not what each specific supervisor stated to their employees. Moreover, the

determination by the Court will hinge in part upon whether or not Kohler sufficiently exercised "its control and see that the work is not performed if it does not want it to be performed."

All employees were subject to Kohler's policies which fail to meet the record keeping requirements of Wisconsin law. Moreover, Kohler admitted policy is that it's the employees' burden to keep track of the hours worked which is again in apposite to both state and federal law. Therefore, speculation on behalf of the Court is not necessary. The policies at issue were applicable to the 140 named plaintiffs and the numerosity requirement is met.

### ii. There are common questions of law or fact.

The focus of this case – or what the question of liability relies upon is Kohler's actions and inactions, not on the alleged differences in "actions, statements, perceptions, interpretations, and implementations of the class members." (Def.'s Br. at 23.) "[I]n any class action for damages, no two parties will ever have exactly the same claim. If simply identifying difference between the parties were enough to defeat a motion for class certification, it would be impossible for any lawsuit to proceed as a class. Thus, the task of a court reviewing a motion for class certification is to decide whether any differences identified are of the type that would make piecemeal litigation a superior vehicle for resolving each of the claims, or, to be more specific, whether the differences will make it impractical to resolve any significant issues regarding liability on a class wide basis." *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 439-440 (W.D. Wis. 2008).

Kohler ignores Plaintiff's citation that commonality is not "defeated by the possibility that the proof required to demonstrate 'injury' might be highly individualized …." *Plaintiffs Class v. Credit Lyonnais Rouse, Ltd. (In re Sumitomo Copper Litig.)*, 262 F.3d 134, 141 (2d Cir. N.Y. 2001). That is, if each individual's facts differ from each other, about how they worked off the clock, but the testimony results in the painting of a picture where Kohler either ignored its

official policy prohibiting off the clock work, or its real policy was that off the clock work was permitted, commonality exists. Here, the information before the Court does just that. Although each Plaintiff may have maintained their hours differently, or were told that overtime was not allowed to be worked as opposed to recording overtime was not allowed, the net result is the same and that is that Kohler suffered or permitted its employees to work off the clock.

The operative facts and questions of law are the same for all the employees here. Whether or not Kohler maintained and fostered a culture in which it "suffered or permitted" its employees to work off the clock. Moreover, it is whether or not Kohler met its duty "to exercise its control and see that the work is not performed if it does not want it to be performed." Kohler does not claim that there were different policies applicable to different employees or that WorkBrain kept records of the start and end time of some of the employees workdays. Although each employees experience may be different, as they will be in almost every class action, the underlying law and how Kohler's policies, procedures, and practices conform and diverge from the law will be common questions of fact and law.

### iii.   Plaintiff's claims are typical of the claims of the class.

Kohler's argument that Plaintiff's claims are not typical of the class's claims is simply Kohler's commonality argument recycled. Kohler again claims that liability in this matter relies only upon the "actions, statements, perceptions, interpretations, and implementation decisions of each putative class member and his or her individual supervisor." (Def.'s Br. at 23.) However, as stated previously, liability depends on whether or not Kohler suffered or permitted its hourly employees to work off the clock and if Kohler sufficiently exercised its control to prohibit off the clock work. The Court's focus will be on Kohler's written and unwritten policies, how those policies fail to comport to Wisconsin law, and how Kohler fostered a culture whereby off the clock work was suffered or permitted without pay. The typicality requirement is whether the

representative plaintiff's claims is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of other members of the purported class. However, Kohler does not claim that Plaintiff's legal claims are not the same legal claims as the putative class members.  (Def.'s Br. at 23.)

### C.  Certification is warranted as Predominance and Superiority exist.

Whether Kohler suffered or permitted its hourly administrative employees to work off the clock through policies which violate Wisconsin law predominates over any other factual question.  This question is the single overriding question which is sufficient despite there being other individual questions. *See Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 620 (W.D. Wis. 2003).  Kohler again drums up the same argument to support its predominance argument that "Plaintiff's claims are contingent upon individual actions, statements, perceptions, interpretations, and implementation decisions of each putative class member and his or her individual supervisor."  (Def.'s Br. at 23.)  Again, the focus of the Court's inquiry into the facts will be on whether Kohler suffer or permitted the off the clock work and whether or not Kohler sufficiently exercised its control to stop off the clock work from being performed.

There may need to be testimony on the individual issues that Kohler points to, but those individual issues will result in a collective picture of the true workings of Kohler – that off the clock work was permitted and required to get their job done.  Ms. Vang's testimony about her weekly experience, in light of other employees' testimony about the same, will be the representative testimony to prove that Kohler violated the law.  Whether or not Kohler permitted the work and if Kohler sufficiently ensured the work is not preformed is the ultimate question which predominates over any individual differences between the plaintiffs.

A class action is superior in this matter – especially in light of the allegation that off the clock work was the culture at Kohler.  Therefore, if each individual's claim will be litigated

separately, then various Kohler representatives will be required to testify at each individual trial about the same issues – i.e. Kohler's human resource policies, Kohler's use of WorkBrain, etc. Moreover, each individual's co-workers will have to testify at individual trials to provide backing that Kohler's culture was in fact one of permitting off the clock work. Such repetitive use of the same questioning does not result in a superior means of litigating this matter. Importantly, this class action would server the purpose of vindicating the rights of a group of people who individually would be without effective strength to bring their opponents to court due to the low dollar value of their claim.

### III. Kohler's focuses on both irrelevant facts and arguments in its brief.

#### A. That only eight employees opted in is not relevant to Rule 23.

Kohler begins its argument in its introduction pointing to the fact that only eight employees have thus far opted into the case. (Def.'s Br. at 1.) First, this ignores the distinction that the opt-in procedure is relevant only to the Fair Labor Standards Act claims in Plaintiff's complaint. Plaintiff's motion for class certification pursuant to Rule 23 of the Federal Rules of Civil procedure pertains to the allegations in the complaint that Kohler violated Wisconsin law in addition to the Fair Labor Standards Act. Secondly, there are many reasons that an individual would be hesitant to opt-into the FLSA action including the fear of retaliation. That more people have not joined the FLSA action is immaterial to the Court's determination under Rule 23.

Though Kohler claims in passing that Plaintiff have not engaged in any discovery since the Court conditionally certified the FLSA claims, Plaintiff has defended four depositions and has propounded discovery on Kohler. Although the Court, in its order granting conditional certification of the FLSA collective action stated that there was a need for further discovery on the accuracy of Plaintiff's FLSA allegations, Plaintiff will do so prior to and in order to meet Kohler's decertification brief on the FLSA certification issue.

### B. Lack of employee complaints is not relevant.

Kohler repeatedly points to a lack of complaints about not being paid properly. This is irrelevant in the determination of whether a class should be certified under Rule 23. There is absolutely no requirement in Wisconsin law (or federal law) that an employee must complain to in order to receive wages that she has earned. Kohler fails to cite to case law so holding. Whether or not an employee complained is not the proper legal standard where the Court's inquiry is into whether Kohler suffered or permitted its employees to work off the clock.

There are many reasons why an employee might not complain to his supervisor while he or she is still working regarding unpaid wages. Some of those reasons include fear of retaliation for raising a complaint and ignorance of the law itself. These reasons are exactly why a class action is appropriate; employees who are unaware of the law or afraid of the consequences of complaining, can have their rights protected in a way which might otherwise be impossible.

### IV.    Notice

Plaintiff has no objection to the Kohler's modifications to the notice other than that Wis. Stat. § 109.03 requires wages be paid within 31 days. Specifically, Plaintiff's claim is brought under Wis. Stat. § 109.03 and therefore mention of such 31 day time period is appropriate.

### CONCLUSION

Plaintiff has sufficiently met the explicit and implicit requirements of Rule 23. Though Kohler points the court towards individual inquiries, those inquiries in the aggregate will provide for the culture Plaintiff complains of. Moreover, many facts including Kohler's policies are the same, as is the legal standard applicable to each individual Plaintiff wishes to represent. Therefore, in light of the arguments in Plaintiff's moving papers and those contained above, Plaintiff respectfully requests the Court grant her motion.

Respectfully submitted this 17th day of June, 2011.

**CROSS LAW FIRM, S.C.**
*Attorneys for Plaintiff*

  **s/LARRY JOHNSON**
Larry A. Johnson
ljohnson@crosslawfirm.com
Noah Reinstein
nreinstein@crosslawfirm.com
Nola J. Hitchcock Cross
njhcross@crosslawfirm.com
The Lawyers Building
845 N. 11th Street
Milwaukee, WI  53233
414-224-0000