# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JENNIFER VANG, on behalf
of herself and all others similarly situated,

        Plaintiffs,

        v.                               Case No. 09-C-842

KOHLER CO., a Domestic Corporation,

        Defendant.

## DECISION AND ORDER

## I. PROCEDURAL BACKGROUND

On September 2, 2009, Jennifer Vang ("Vang") filed this lawsuit on behalf of herself and all others similarly situated (collectively "plaintiffs") against the Kohler Company ("Kohler" or "defendant"). The plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Wisconsin Wage Payments, Claims and Collections Law ("Wage Law"), Wis. Stat. §§ 109.01–109.12.

On November 29, 2010, this court issued an order conditionally certifying a collective action on the alleged FLSA violations. The plaintiffs issued notice to potential class members and allowed additional members to "opt-in" to the collective action.

On May 10, 2011, the plaintiffs filed a motion for Rule 23 class certification on their state claims under Wisconsin's Wage Law. On July 15, 2011, the defendant filed a motion to decertify the plaintiffs' collective action and to dismiss the opt-in plaintiffs. The motions have been fully briefed and are ready for resolution by this court. For the reasons that follow, the plaintiffs' motion will be granted and the

defendant's motion will be denied.

## II.  FACTUAL BACKGROUND

Vang was employed as an hourly administrative employee at Kohler from May 2003 until October 2007.  She and the members of the putative class recorded the hours they worked in a system called "Workbrain," which calculates total weekly hours for payroll purposes.  The plaintiffs did not enter the exact start and end time of each workday, nor the start and end time of any unpaid breaks.  Instead, the plaintiffs entered the total hours worked each day.  The plaintiffs typically entered daily totals once a week.

In or around August 2006, the plaintiffs claim that they were instructed that overtime would no longer be paid for hours worked in excess of forty hours per week.  The defendant disputes this claim, arguing instead that supervisors instructed employees not to *work* more than forty hours per week, not that an employee's overtime would be uncompensated.  The plaintiffs assert that despite the express policy allowing only forty work hours per week, the plaintiffs' workload remained the same.  The plaintiffs claim that they worked beyond forty hours most weeks to accomplish their work, but were told they could not record overtime.  The defendant disputes this assertion as well, claiming again that supervisors only told employees not to *work* beyond their standard forty-hour workweek, not that overtime would be uncompensated.

The plaintiffs state that prior to August 2006, the plaintiffs routinely recorded and be were compensated for hours worked in excess of forty per week.  Vang claims that the overtime policy changed due to an email from the vice-president of operations, Jeff Overly ("Overly"), in or around August 2006.  (Vang Dep. 89.)  It is Vang's belief that the Overly Memo described the new Kohler policy that the defendant "would not be paying or allowing overtime pay anymore."  (Vang Dep. 90.)  Vang asserts that

2

before the issuance of the Overly Memo, she could record and receive overtime pay. (Vang Dep. 102–03.) However, after the Overly Memo, she would work overtime hours, but not receive overtime pay. (Vang Dep. 102–03.) Specifically, Vang asserts that "work needed to be done," so she would work the hours she needed to get her work done. (Vang Dep. 102.) She would then ask her supervisor if she could claim the overtime and "he would tell [her] no, [she] cannot; or yes, [she] could, because of a particular project or circumstance that was preapproved." (Vang Dep. 104.)

The other potential class members who were deposed for this action recount similar circumstances regarding work hours and compensation for overtime. (Bergeron Dep. 49–50; 53; Fleischmann Dep. 43–45; Ricker Dep. 24–25.)[1] However, putative class members who were deposed do not assert that their supervisors denied them the ability to record overtime hours. Instead, they assert that they were told they could not work overtime, but that overtime hours were needed to complete their daily tasks. The putative class members who were deposed claim that Kohler permitted the plaintiffs to work overtime hours without compensating them accordingly.

### III. DISCUSSION

**A. Plaintiffs' Motion to Certify Class Pursuant to Rule 23**

Generally, only individual named parties may conduct litigation. *Gen. Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). However, a class action is appropriate in situations where the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). Litigating

---

[1] In it's memorandum in opposition to the plaintiffs' motion for class certification, the defendant argues that the declarations of Janine Bergeron, Lori Ricker, Kia Yang, and Corinne Raml, submitted September 9, 2010, should be stricken from the record due to inconsistencies between the declarations and deposition testimony. (Def.'s Mem. Opp'n 16–17.) The defendant also asks that the subsequent declarations of the same individuals, submitted August 5, 2011, be stricken for the same reason. (Def.'s Reply Mem. Supp. 2–4.) The court did not rely on the declarations in formulating this decision and therefore will not address the extent to which the declarations may or may not be contradictory.

3

such cases as a class, as opposed to individually, saves the resources of the courts and the parties by deciding similar issues that affect all class members. *Id.*

　　To proceed as a class, the plaintiffs must first satisfy two implicit requirements that the representative plaintiff has standing to sue and that the class is definable. *Bzdawka v. Milwaukee Cnty.*, 238 F.R.D. 469, 472 (E.D. Wis. 2006). If the plaintiffs can meet the two implicit requirements, then the plaintiffs must also demonstrate that they meet the prerequisites described in Rule 23 of the Federal Rules of Civil Procedure. *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992).

*1. Implicit Requirements*

　　In addition to the express requirements of Rule 23, courts in this circuit have recognized two implicit requirements that the plaintiffs must satisfy. *See Bzdawka*, 238 F.R.D. at 472 (plaintiff must establish that she has standing to sue and that the class is definable). First, the named representatives must have standing to bring the suit. *Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 614 (W.D. Wis. 2003). This means that the named plaintiffs "must be members of the class they propose to represent." *Id.* Second, the proposed class definition must be precise, objective, and presently ascertainable. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 958 (W.D. Wis. 2008).

　　The court will first address whether the proposed class is precise, objective, and presently ascertainable. To satisfy this implicit requirement, the plaintiffs need only propose a class that is "precise enough to enable the court to determine whether at any given time a particular individual is or is not a member of the class." *Bzdawka*, 238 F.R.D. at 474 (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)). Here, along with their motion for class certification, the plaintiffs filed the proposed notice they intend to send to class members. In the proposed notice, the plaintiffs define the class as follows:

4

> All persons who are or have been employed by Kohler as an Administrative Assistant I, Administrative Assistant II, Area Associate I, Area Associate II, Secretary and Senior Secretary in Wisconsin, at any time from September 2, 2007 through the final disposition of this case, who have worked without being compensated for each hour worked under a "comp time" or "compensatory time" scheme and/or by following a policy not allowing employees to record every hour worked including working through unpaid lunch breaks.

(Pls.' Proposed Notice 1).

The proposed class in this case clearly delineates who does and does not fit within the parameters of this class action. The court can easily and objectively determine whether a particular individual is a member of the class. The plaintiffs' class definition is therefore sufficient.

The second implicit requirement is that the named plaintiff has standing to bring the class action. As discussed above, in order to have standing for purposes of a class action, the named representative must be a member of the class she purports to represent. Here, Vang was employed by the defendant as an administrative employee from about May 2003, through about October 2007. (Pls.' Br. 11.) She alleges that she was permitted to work off-the-clock without compensation. (Pls.' Br. 12.)

The defendant argues that Vang is not an appropriate representative because "it is only possible for [Vang] to be a member of the class she purports to represent for a single month." (Def.'s Mem. Opp'n 18.) Although this issue may tend to support her inadequacy as a representative of the class, it does not suggest that Vang lacks standing. Indeed, the rule only requires that the named representative be a member of the class; not that the named plaintiff be the "best" representative of the class. Because Vang is a member of the class, no matter her duration as such, she meets the implicit requirement that the class representative have standing.

*2. Rule 23 Requirements*

Rule 23 of the Federal Rules of Civil Procedure provides the requirements to certifying a class

5

action.  Initially, an individual litigant must establish four prerequisites under Rule 23(a): numerosity, commonality, typicality, and fair and adequate representation.  *Rosario*, 963 F.2d at 1017.  "Once these four prerequisites are satisfied, the potential class must also satisfy at least one provision of Rule 23(b)." *Id.*

The district court has broad discretion in determining whether certification of a class action lawsuit is appropriate under Rule 23.  *Olson v. Brown*, 594 F.3d 577, 584 (7th Cir. 2010).  The court need not accept allegations in the complaint as true, but should instead make the factual and legal inquiries necessary to ensure that the prerequisites and requirements of Rule 23 are satisfied.  *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676–77 (7th Cir. 2001).  "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 161).  Although as a general matter, a court should not address the merits of the ultimate issues in the case, "some overlap with the merits of the plaintiff's underlying claim" may be inevitable during the "rigorous analysis" required by Rule 23.  *Dukes*, 131 S. Ct. at 2551.

The plaintiffs claim that they meet the four prerequisites of Rule 23(a) and also, that they meet the additional requirements set forth under subsection (b)(3).  The defendant argues, however, that the plaintiffs cannot establish numerosity, typicality, and commonality.[2]  Additionally, the defendant argues that the plaintiffs do not meet any of the provisions under Rule 23(b).  The court addresses each of the prerequisites and requirements for class certification below.

---

[2]  The defendant does not, at this time, dispute that the named plaintiff and her attorneys would provide fair and adequate representation of the class.

6

### a. Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure provides for certification if a class is "so numerous that joinder of all members is impracticable." Generally, joinder is considered impracticable for classes numbering at least 40 persons. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969). A plaintiff need not specify an exact number of potential class members to prove numerosity. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). However, "a conclusory allegation that a class is so numerous that joinder is impracticable is not sufficient to meet the requirements of Rule 23(a)(1)." *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976).

Here, the plaintiffs have established that approximately one hundred and forty persons fit within the class definition. (Pls.' Br. 13.) In response to this court's decision to conditionally certify the plaintiffs' collective action, the defendant provided a list of one hundred and forty persons who fit the definition of potential plaintiffs in the collective action. (Pls.' Br. 13.) The description of the class in the collective action is almost identical to the description for the class action under Rule 23, so it seems likely that the same individuals would be encompassed by this class definition. Joining at least one hundred and forty persons to this action is impracticable. I therefore find that the plaintiffs have met the numerosity requirement of Rule 23(a).

### b. Commonality

"Commonality requires the plaintiff to demonstrate that class members 'have suffered the same injury,'" not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157). Class members' "claims must depend on a common contention," which is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the

7

claims in one stroke." *Id*. "'What matters to class certification . . . is not the raising of common questions–even in droves–but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id*. (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis original).

In *Dukes*, the named plaintiffs, who represented 1.5 million class members, were "current or former Wal-Mart employees who allege[d] that the company discriminated against them on the basis of their sex by denying them equal pay or promotions, in violation of Title VII." *Dukes*, 131 S. Ct. at 2547. "The basic theory of their case [was] that a strong and uniform 'corporate culture' permit[ted] bias against women to infect, perhaps subconsciously, the discretionary decisionmaking of each one of Wal-Mart's thousands of managers–thereby making every woman at the company the victim of one common discriminatory practice." *Id*. at 2548. The Court denied class certification finding that the plaintiffs did not present significant proof that Wal-Mart "operated under a general policy of discrimination." *Id*. at 2554. Without a uniform policy, and therefore a common question, the court would be unable to fashion an answer to a common question that resolves the litigation for all members. *Id*. at 2556–57. The plaintiffs therefore failed to meet the commonality requirement of Rule 23(a). *Id*.

Unlike the plaintiffs in *Dukes*, a common question clearly emerges from the actions of the plaintiffs and the defendant in this case. The plaintiffs argue that they were permitted to work off-the-clock in order to finish assigned work. The plaintiffs agree that there was a policy disallowing overtime, but that in order to complete their work, the plaintiffs needed to work before or after an assigned shift, or through lunch. The plaintiffs testify that the overtime they worked occurred on the defendant's premises. Based on these facts, the plaintiffs assert that the defendant violated Wisconsin's Wage Law.

8

The plaintiffs do not argue that Kohler had an express policy not to compensate employees for overtime. The plaintiffs acknowledge that Kohler had an express policy not to allow employees to *work* overtime, but to compensate them appropriately for overtime worked. Despite this express policy, Kohler may still be liable under Wisconsin's Wage Law.

The Wisconsin Administrative Code explains when an employer must compensate an employee for work that the employer did not request, but the employee worked anyway. Wis. Adm. Code § DWD 272.12. Specifically, Wis. Adm. Code § DWD 272.12(2)(a) provides the following:

> 1. General. Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. They may be a piece-worker, they may desire to finish an assigned task or they may wish to correct errors, past work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that they are continuing to work and the time is working time.
>
> 2. Work performed away from the premises or job site. The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, they must count the time as hours worked.
>
> 3. Duty of management. In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

Wis. Adm. Code § DWD 272.12(2)(a)(1) does not contain a requirement that the plaintiff prove that her employer "knew or should have known" that the employee was working.[3] Instead, the section assumes that if hours are being worked on the premises or job site, the "employer knows or has reason

---

[3] This differs from the requirements set forth in case law applying the FLSA. As discussed in Section III(B)(2)(a) of this decision, to prove that the employer suffered or permitted an employee to work under the FLSA, a plaintiff must show that the employee worked hours for which she was not properly compensated and that the employer had actual or constructive knowledge of the hours being worked. Wis. Adm. Code § DWD 272.12(2)(a)(1), on the other hand, assumes knowledge. *See Spoerle v. Kraft Foods Global, Inc.*, 626 F. Supp. 2d 913, 920 (W.D. Wis. 2009) ("Wisconsin law gives workers more rights than they would be entitled to under federal law . . . .").

9

to believe that [the employee is] continuing to work and the time is working time." Wis. Adm. Code § DWD 272.12(2)(a)(1). Additionally, the burden rests heavily on the employer to ensure that employees are not performing work that the employer does not want to be performed. Wis. Adm. Code § DWD 272.12(2)(a)(3). Kohler cannot rely on an express policy providing for overtime compensation if the company's practice is to permit overtime to be worked without compensating employees for their overtime. Wis. Adm. Code § DWD 272.12(2)(a)(3).

The class in this action asserts the same injury: work off-the-clock, resulting in the defendant's failure to pay wages due to the plaintiffs. Specifically, the plaintiffs state that

> Vang and the putative class indicate that they were instructed that overtime was no longer allowed, but their workloads did not change. Vang and the putative class each allege that these policies operate to foster a culture where Kohler suffered or permitted [the plaintiffs] to perform various kinds of off-the-clock work. Vang and the putative class members issues of fact are not only common, they are unified.

(Pls.' Br. 16.)

After reviewing the record, the court agrees that the commonality requirement has been met. The plaintiffs present evidence that they had significant workloads. They also present evidence that each plaintiff would work before and/or after his or her scheduled work times, or during lunch, in order to complete this work. The plaintiffs assert that they were not always paid for the overtime hours they worked. At least one plaintiff was told whether or not she could be compensated for overtime after working the overtime hours. Thus, the plaintiffs present a common harm that can be redressed by finding the answer to the question, "Did Kohler have a policy or practice of suffering or permitting its employees to work uncompensated overtime?" This complies with the standard set forth in *Dukes*.

The defendant argues, however, that "what this case boils down to is what each putative class member was allegedly told by his or her individual supervisor, how they interpreted those statements, and

how they implemented them on a daily, weekly, and monthly basis." (Def.'s Mem. Opp'n 22.) The court disagrees. What this case "boils down to" is whether the defendant permitted employees to work overtime without compensation, in violation of state law. If the defendant followed a policy or practice of not compensating employees for overtime worked, the fact that individual circumstances differ slightly regarding which supervisor permitted the uncompensated work is inconsequential. *See Spano v. Boeing, Co.*, 633 F.3d 574, 585 (7th Cir. 2011) ("Rule 23(a)(2) does not demand that every member of the class have an identical claim. It is enough that there be one or more common questions of law or fact."). *See also Hubler Chevrolet, Inc. v. General Motors Corp.*, 193 F.R.D. 574, 577 (S.D. Ind. 2000) ("GM's argument that Plaintiffs' claims are based on a variety of differing oral and written communications cannot defeat commonality and typicality, though it may be relevant in determining whether common issues predominate."). Thus, the court finds that the plaintiffs has established commonality.

### c. Typicality

A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quoting H. Newberg, *Class Actions*, § 1115(b) at 185 (1977)). Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the court should direct its focus on whether "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id*.

The members of the class allege that they were not fully compensated for their hours worked because the plaintiffs were permitted to work off-the-clock in order to accomplish their work assignments. The plaintiffs assert that they worked off-the-clock in response to the corporate culture

11

disallowing overtime work and compensation, but requiring employees to complete their daily work. Vang's allegations are identical to those of the class she purports to represent. Although each supervisor may be different, if Kohler's policy or practice is to permit work to be completed off-the-clock, then the actual supervisor committing the error does not matter. Based on the language of Wisconsin's Wage Law, the plaintiffs need only demonstrate that they worked uncompensated overtime on the employer's premises to create a presumption that the employer knew or should have known about the additional work time. A specific supervisor's knowledge or discussions between a supervisor and an employee are irrelevant for purposes of Wisconsin's Wage Law.

Based on the record, Vang's claims "have the same essential characteristics as the claims of the class at large." The court therefore finds that the named plaintiff meets the typicality requirement of Rule 23(a).

<u>d.  Predominance and Superiority</u>

The plaintiffs seek class certification pursuant to Rule 23(b)(3). Subsection (b)(3) requires the plaintiffs to show that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Issues relevant to determining predominance and superiority are:

(A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already begun by or against members of the class;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

12

      (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The defendant argues that the individual circumstances of the harm presented by each plaintiff demonstrate that the laws or facts common to the class members do not predominate over questions affecting only individual members. The defendant relies heavily on a perceived need to determine what each individual supervisor said to each individual plaintiff regarding overtime pay. *See Pastor v. State Farm Mut. Auto Ins. Co.*, 487 F.3d 1042, 1046 (7th Cir. 2007) (predominance requirement not satisfied on breach of automobile insurance policy because "[i]ndividual hearings would be necessary to determine whether a class member made a claim for his $10 a day, whether his car was unusable, and if so for how long"); *Frahm v. Equitable Life Assurance Soc'y of the U.S.*, 137 F.3d 955, 956 (7th Cir. 1998) (predominance requirement not satisfied on breach of fiduciary duty claim where "everything depends on what was said or sent to each agent personally, and different benefits advisers said or wrote different things to different agents.").

However, this case differs significantly from the cases relied upon by the defendant because the plaintiffs have not brought a contract claim, nor do they allege fraud. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597–98, n.17 (7th Cir. 1993) ("We note that there is some authority that claims based substantially on oral rather than written communications are inappropriate for treatment as class actions unless the communications are shown to be standardized . . . . We also note that these cases are mainly fraud and securities cases.") (citations omitted). The plaintiffs therefore do not need to prove that each individual relied on specific misrepresentations in order to have a claim. Instead, the plaintiffs need to establish that Kohler had a policy or practice of not compensating employees for the hours they worked, in violation of Wisconsin's Wage Law. No proof of reliance on spoken promises is necessary.

13

Additionally, as discussed above, the plaintiffs need not establish that the employer knew or should have known that they were working overtime. If the overtime was worked, then the employer should have known about it and had the responsibility to stop the employee from completely additional work. Thus, the plaintiffs need not present evidence regarding the knowledge of individual supervisors to support their claim. Instead, the plaintiffs must demonstrate that they completed uncompensated work on the defendant's premises. This demonstrates that the common legal and factual issues predominate over any factual discrepancies among the individuals.

The final issue regarding predominance relates to monetary damages sought by the plaintiffs. If the plaintiffs establish liability, an individual inquiry would likely be necessary to determine each plaintiff's unpaid wages. *Wamboldt v. Safety-Kleen Systems, Inc.*, No. C 07-0884 PJH, 2010 WL 3743925, at *10 (N.D. Cal. Sept. 20, 2010). However, "the need for individualized damages determinations does not, in and of itself, require denial" of a motion for class certification. *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008). When, as here, "there are substantial common issues that outweigh the single variable of damages," a district court "can devise solutions to address that problem." *Id.* For example, a district court can implement one of the following:

> (1) bifurcat[e] liability and damage trials with the same or different juries; (2) appoint[] a magistrate judge or special master to preside over individual damages proceedings; (3) decertify[] the class after the liability trial and provid[e] notice to class members concerning how they may proceed to prove damages; (4) creat[e] subclasses; or (5) alter[] or amend[] the class.

*In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 141 (2d Cir. 2001), *superceded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006). *See also* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.").

14

The court finds that although each class member would need to prove his or her damages under Wisconsin's Wage Law, the common issues with regard to liability substantially outweigh the individual issue of damages. I also find that several options are available to address the individual nature of the damages in the event that the plaintiffs prove liability. The court therefore finds that the plaintiffs have met the "predominance" requirement of Rule 23(b)(3).

The court also finds, for the reasons discussed above, that proceeding as a class is superior to litigation of the issues by individuals. Specifically, if the plaintiffs prove that Kohler had a policy or practice of not fully compensating its employees, then those persons not fully compensated are entitled to damages. Providing evidence of this alleged policy or practice, at least as it relates to the defined class in Wisconsin, would be duplicated in each individual lawsuit if the plaintiffs were not allowed to proceed as a class. This runs counter to the objective of class actions to provide for efficiency for the parties and the courts. I therefore find that allowing the lawsuit to proceed as a class action is superior to litigation by each individual plaintiff.

e. Notice

The final issue with regard to certifying the class action is that the plaintiffs' proposed notice must comply with Rule 23(c)(2)(B). The defendant does not assert that the notice fails to comply with Rule 23(c)(2)(B), and the court has failed to find any substantive insufficiencies, as it relates to Rule 23. Thus, the notice meets the requirements set forth in Rule 23(c)(2)(B).

However, the defendant requests that four changes be made to the plaintiffs' proposed notice of class action. First, the defendant asks that the reference to "Aurora Healthcare" as the defendant be removed with the inclusion of the proper defendant in its place. Second, the defendant asks that the defendant's hospitality division be excluded from the litigation, as was decided in the court's January 28,

15

2011 Order regarding the plaintiffs' motion for clarification. Third, the defendant claims that the allegation that the defendant failed to pay employees within 31 days, in violation of Wisconsin law, should be excluded from the notice because it was not part of the plaintiff's complaint. Lastly, the defendant asks that the putative class members be given ninety days to opt-out of the class action.

The plaintiffs agree with the defendant's proposed changes with one exception. The plaintiffs assert that they brought a claim under Wis. Stat. § 109.03, which specifically states that employers must pay employees for the hours worked by the employees within 31 days of the hours worked. The court agrees with the plaintiffs and will allow the 31-day language to remain. However, the court will order that the notice to potential class members be revised in conformity with this decision and order.

## B. Defendant's Motion to Decertify Collective Action

As discussed in the court's order granting Vang's motion for conditional certification of a collective action, this court is employing the two-step process endorsed by other courts in this circuit. During step one, the court must determine whether the plaintiff has demonstrated a "reasonable basis" for finding that she is similarly situated to potential class members. *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008). If the plaintiff makes this initial showing, the court conditionally certifies the class, authorizes notice, and the parties conduct discovery. *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605.

At step two, the defendant may make a motion for decertification, which requires the court to examine the evidence and arguments presented and determine whether the opt-in plaintiffs are actually similarly situated to the representative plaintiff.[4] *Id.* The court may dismiss, without prejudice, any opt-

---

[4] The court notes that the parties have not yet completed discovery. The discovery deadline has been postponed pending resolution of the parties' motions regarding class and collective action certification.

16

in plaintiffs who are not similarly situated. *Id*. Additionally, the court may decertify the class if the evidence demonstrates that none of the class members are similarly situated. *Id*. If the plaintiff meets her burden at the second step, then the case proceeds to trial as a collective action. *Id*.

To determine whether the opt-in plaintiffs are similarly situated to the representative plaintiff, "'a court reviews several factors, including (1) disparate or shared factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.'" *Russell v. Ill. Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001). "The merits of the plaintiffs' claims are not considered at the decertification stage." *Burch v.Qwest Commc'ns Int'l*, 677 F. Supp. 2d 1101, 1114 (D. Minn. 2009).

*1. Factual and Employment Settings*

The plaintiffs in this case are current or former employees of Kohler in Wisconsin. Further, each plaintiff works or has worked as an administrative employee, which means that the each plaintiff fits into one of six job classifications.[5] Additionally, as discussed above, the plaintiffs all assert that they were permitted to work off-the-clock, and therefore without appropriate compensation, in violation of the FLSA. The circumstances surrounding each plaintiff's account, though different in certain respects, all follow a similar chain of events: (1) overtime routinely recorded and compensated; (2) change in policy in or around August 2006; (3) overtime still worked but no longer fully compensated. This factor therefore weighs in favor of certifying the collective class.

*2. Defenses Available to the Defendant*

---

[5] These six categories include Administrative Assistant I, Administrative Assistant II, Area Associate I, Area Associate II, Secretary and Senior Secretary.

17

a.  Underline Employer Knowledge

"[T]o establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."[6] *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *Hawkins v. Securitas Sec. Services USA, Inc.*, No. 09 C 3633, 2011 WL 5598365, *9 (N.D. Ill. Nov. 16, 2011).  If the employer has actual or constructive knowledge of the overtime work, it is the employer's duty to take affirmative steps to enforce its policy not allowing employees to work overtime.  *See* 29 C.F.R. § 785.13.

The defendant argues that the problem the plaintiffs face under a claim for "suffering or permitting" employees to work overtime, is that each plaintiff must establish that her supervisor knew or should have known that the plaintiff was working overtime.  Based on the evidence presented, many of the plaintiffs in the collective class had different supervisors.  Additionally, some of the opt-in plaintiffs had several supervisors throughout the course of their employment.  The defendant therefore argues that an individualized analysis into the particular circumstances surrounding each plaintiff would be required if the court certified the collective action.

The court disagrees.  29 C.F.R. § 785.11 provides the following:

> Work not requested but suffered or permitted is work time.  For example, an employee may voluntarily continue to work at the end of the shift.  He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, past[] work tickets, prepare time reports or other records.  The reason is immaterial.  The employer knows or has reason to believe that he is continuing to work and the time is working time.

---

[6]  The court discusses Wisconsin's Wage Law counterpart to this required showing in Section III(A)(2)(b) of this decision.
.

18

The question is not whether each individual supervisor knew or had reason to know that off-the-clock work was being completed, but whether Kohler knew or had reason to know that off-the-clock work was occurring. *See Cunningham v. Gibson Elec. Co.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999) ("Knowledge of [the employer's] supervisors is imputed to the employer."). The district court in *Brennan v. Qwest Commc'ns Int'l, Inc.*, No. 07-2024 ADM/JSM, 2009 WL 1586721, at *6 (D. Minn. June 4, 2009), stated the issue clearly and succinctly:

> [T]he relevant question is not whether a specific supervisor knew that off-the-clock work was occurring but rather whether the circumstances were such that Qwest, as the employer, knew or should have known that off-the-clock work was occurring. Certainly, the fact that some, perhaps many, supervisors did not know about off-the-clock work will be relevant to determining that question, but that is an issue for the factfinder considering the ultimate merits of Plaintiffs' claims and not a relevant factor in determining if the named plaintiffs and opt-in plaintiffs are similarly situated.

Like the court in *Brennan*, I find that determining whether the circumstances surrounding the plaintiffs' overtime work demonstrates that Kohler knew or should have known that the plaintiffs were working beyond their regular working hours is a merits issue and not appropriate at this stage of the litigation. It is sufficient that the plaintiffs have demonstrated similar circumstances, causing this court to find that they are indeed similarly situated. This factor therefore weighs in favor of certification.

### b. Preliminary/Postliminary Activities and *de Minimis* Exception

The defendant asserts, in a footnote, that the defendant raised "the defenses of *de minimis non curet lex* and preliminary/postliminary activities" in its answer and statement of defenses, and that "both of which . . . require an individualized assessment of the facts and circumstances surrounding each opt-in's employment." (Def.'s Mem. Supp. 19.) The defendant does not elaborate any further on this argument. Without being pointed to any individualized assessments necessary with regard to the

19

affirmative defenses, the court finds that this factor does not weigh against certifying the collective action.

### 3. Fairness and Procedural Considerations

"A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486 (1989). The judicial system also benefits by "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Id*. However, where a conditionally certified action proves unmanageable due to varying facts and law, the court should deny certification. *See Burch*, 677 F. Supp. 2d at 1120 (decertifying collective action of 1,500 current and former employees as unmanageable because claims varied enormously among employees).

Eight individuals have decided to opt-in to this collective action. Based on this small number, and the consistency of the facts surrounding each plaintiff's claim, the court sees no reason to find the collective action unmanageable.

Additionally, the court certified the plaintiffs' class action with regard to the state law issue. The facts and applicable laws are largely identical. Thus, the court must delve into the facts of the individual plaintiffs whether the collective action remains or is decertified. If the parties and the court must entertain the same facts and essentially the same legal arguments, then decertifying the collective action does not accomplish the goal of judicial economy. This factor therefore weighs in favor of certification of the collective action.

### 4. Conclusion

Although there are some questions involving individualized circumstances, the court finds that addressing the plaintiffs' claims in a collective action is appropriate in this case. Several questions common to the entire class could be answered and applied equally to the entire class. Additionally, due

20

to the size of the collective action, any individualized analysis will not be unduly burdensome on the parties or the court. In fact, decertifying the collective action and requiring each opt-in plaintiff to assert her own action against Kohler would prove inefficient, given the scope of this litigation. I will therefore deny the defendant's motion to decertify the collective class.

The court notes, however, that discovery in this case has not been completed. Should the case become unmanageable in its current form, though this appears unlikely, the court reserves the right to reconsider the issue of decertification. *See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 954 n.8 (11th Cir. 2007) ("When, and if, the district court is convinced that the litigation cannot be managed, decertification is proper.") (quotation marks and citation omitted); *Blihovde*, 219 F.R.D. at 614 (district court "can decertify the class at any time before a decision on the merits") (citing Fed. R. Civ. P. 23(c)(1)).

## IV. CONCLUSION

For the reasons stated above, the court will grant the plaintiffs' motion for Rule 23 class certification and order that the plaintiffs file a revised proposed notice in compliance with the revisions discussed in this order. Additionally, the court will deny the defendant's motion to decertify the collective action and dismiss the opt-in plaintiffs.

**NOW THEREFORE IT IS ORDERED** that the plaintiffs' motion for Rule 23 class certification be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the defendant's motion for decertification of the collective action class and dismissal of the opt-in plaintiffs be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the following class is certified:

> All persons who are or have been employed by Kohler as an Administrative Assistant I, Administrative Assistant II, Area Associate I, Area Associate II, Secretary and Senior Secretary in Wisconsin, at any time from September 2, 2007 through the final

21

disposition of this case, who have worked without being compensated for each hour worked under a "comp time" or "compensatory time" scheme and/or by following a policy not allowing employees to record every hour worked including working through unpaid lunch breaks.

**IT IS FURTHER ORDERED** that Jennifer Vang be and hereby is appointed as class representative;

**IT IS FURTHER ORDERED** that plaintiffs' counsel be and hereby is appointed as class counsel;

**IT IS FURTHER ORDERED** that the parties shall complete all discovery in accordance with Civil L.R. 26(c) on or before March 15, 2012;

**IT IS FURTHER ORDERED** that the parties file any dispositive motions, together with briefs, in accordance with Civil L.R. 56, on or before April 23, 2012. In all cases, including those which have been designated for electronic filing, counsel are to provide paper copies of all dispositive motions, such as motions for summary judgment and motions to dismiss, along with supporting documentation directly to the judge's chambers. Such copies are to be clearly marked "COPY" on the first page of each document submitted. In addition, the parties are hereby directed to either file a 3.5" IBM-compatible disk or CD containing the proposed findings of fact and any responses thereto, as called for under Civil L.R. 56(b), or, in the alternative, to e-mail such proposed findings of fact and responses thereto in Word Perfect or Word format to CallahanPO@wied.uscourts.gov;

**IT IS FURTHER ORDERED** that a scheduling conference will be conducted on April 30, 2012 at 9:30 a.m. in Room 242 of the U.S. Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202. If there are unresolved summary judgment motions at that time, the scheduling conference will be cancelled.

**SO ORDERED** this <u>12th</u> day of December 2011, at Milwaukee, Wisconsin.

BY THE COURT:

<u>s/ William E. Callahan, Jr.</u>
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

23