UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JENNIFER VANG,
on Behalf of Herself and
All Others Similarly Situated,

        Plaintiffs,

        v.                              Case No. 09-C-842

KOHLER CO.,
a Domestic Corporation,

        Defendant.

**DECISION AND ORDER**

**I. BACKGROUND**

On December 12, 2011, the court issued an order granting Jennifer Vang's ("Vang") motion for class certification, pursuant to Federal Rule of Civil Procedure 23, and denying Kohler Company's ("Kohler") motion to decertify the collective action under the Fair Labor Standards Act ("FLSA"). (Decision and Order, Dec. 12, 2011, ECF No. 101.) The court certified the following class:

> All persons who are or have been employed by Kohler as an Administrative Assistant I, Administrative Assistant II, Area Associate I, Area Associate II, Secretary and Senior Secretary in Wisconsin, at any time from September 2, 2007 through the final disposition of this case, who have worked without being compensated for each hour worked under a "comp time" or "compensatory time" scheme and/or by following a policy not allowing employees to record every hour worked including working through unpaid lunch breaks.

(Dec. and Order, Dec. 12, 2011, at 21–22, ECF No. 101.)

On December 23, 2011, Kohler filed a motion to reconsider the court's December 12, 2011 Decision and Order. (Mot. for Reconsideration, ECF No. 102.) On February 14, 2012, the court denied

the defendant's motion for reconsideration. (Order, Feb. 14, 2012, ECF No. 110.) However, in the February 14, 2012 Order, the court reevaluated its decision with regard to the commonality element of Rule 23(a)(2). The court acknowledged that "it may have interpreted Wisconsin's Wage Law too broadly," but that "any error created by such an interpretation is inconsequential." (Order, Feb. 14, 2012, at 3, ECF No. 110.) The court found that the plaintiffs still met the commonality requirement because they allege that "an unofficial policy exists and the determination of whether this policy does in fact exist drives the resolution of the litigation." (Order, Feb. 14, 2012, at 3, ECF No. 110.)

After addressing the commonality requirement of Rule 23(a)(2), the court did not then continue its analysis to address what implication the reevaluation had on whether the common issues predominate over any individual issues, pursuant to Rule 23(b)(3). Thus, the analysis was incomplete.

On June 22, 2012, the Court of Appeals remanded the case to this court to complete the analysis under Rule 23(b)(3) by determining whether, in light of the court's decision on reconsideration, "the common questions predominate and . . . the class action is the superior method of resolving the parties' dispute." (USCA Order at 2, ECF No. 115.)

For the reasons that follow, the court finds that the class meets the requirements of Rule 23(b)(3) and will therefore deny the defendant's motion for reconsideration.[1]

## II. DISCUSSION

To certify a class, the plaintiffs must meet the prerequisites listed in Federal Rule of Civil Procedure 23(a), which requires numerosity, commonality, typicality, and adequate representation. Additionally, the plaintiffs must satisfy one of the three types of class actions listed in Rule 23(b). Fed.

---

[1] The court will not provide the facts of the case as the court has previously recited the facts relating to class certification in its December 12, 2011 Order certifying the class. However, all facts relevant to this court's analysis under Rule 23(b)(3) will be discussed in the appropriate sections.

R. Civ. P. 23(b). The plaintiffs in this case assert that they qualify for class status under Rule 23(b)(3), which states that a class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)

To determine whether common issues predominate and whether the class action is superior to other available methods for fairly and efficiently adjudicating the controversy, the court must look to the substantive elements of the plaintiffs' claims, what proof will be necessary, and how a trial on the issues would be managed. *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 301 (N.D. Ill. 2005) (quoting *Pastor v. State Farm Mut. Auto. Ins. Co.*, 05 C 1459, 2005 WL 2453900, at *5 (N.D. Ill. Sept. 30, 2005)). In this case, the plaintiffs allege that they were not paid for all overtime hours worked. To prove a claim of unpaid overtime wages, a plaintiff must prove that (1) she worked before or after her shift or during unpaid lunch breaks; (2) her employer "suffered or permitted" the work; (3) she worked more than forty hours during one week; and (4) she was not paid at one and one-half times her regular hourly rate. Wis. Adm. Code §§ DWD 272.12, 274.02–03. The element at issue in this order is whether the plaintiffs have demonstrated that common issues predominate over individual issues with regard to whether Kohler suffered or permitted the employees to work overtime hours without compensation.

In the December 12, 2011 Order, the court found that for purposes of the "suffered or permitted" element, Wisconsin's Wage Law does not require an employee to prove that her employer "knew or had reason to believe" that the employee was working because knowledge would be assumed if the employee completed her work on the employer's premises. Specifically, the court stated that "Wis. Adm. Code § DWD 272.12(2)(a)(1) does not contain a requirement that the plaintiff prove that her employer 'knew

3

or should have known' that the employee was working. Instead, the section assumes that if hours are being worked on the premises or job site, the 'employer knows or has reason to believe that [the employee] is continuing to work and the time is working time.'" (Dec. and Order, Dec. 12, 2011, at 9–10, ECF No. 101.) The relevant portions of Wisconsin Administrative Code § DWD 272.12(2)(a) provide the following:

> 1. General. Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. They may be a pieceworker, they may desire to finish an assigned task or they may wish to correct errors, past work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that they are continuing to work and the time is working time.
>
> 2. Work performed away from the premises or job site. The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, they must count the time as hours worked.

Under Wisconsin's Wage Law, an employee must prove that the employer knew or had reason to believe work was being performed. However, in comparing the two provisions, the first provision states that "[t]he employer knows or has reason to believe" that the employee is working, whereas the second provision, which relates to work performed away from the job site, states that "*If* the employer knows or has reason to believe" that the employee is working, then the employer must count the hours as work time. Wis. Adm. Code §§ DWD 272.12(2)(a)1-2. (emphasis added). The difference in the two provisions clearly demonstrates that Wisconsin Administrative Code § DWD 272.12(2)(a)1 provides that the employer does know or has reason to believe that the employee is continuing to work <u>when the work is completed on the employer's premises</u>. *See Reich v. Dept. of Conservation and Natural Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994) ("[A] court need only inquire whether . . . [the employer] had the opportunity through reasonable diligence to acquire knowledge." (internal quotation marks and citations omitted)).

4

Regardless of this court's afore-stated observation on how Wisconsin's Wage Law should be interpreted, Kohler correctly pointed out in its motion for reconsideration that Wisconsin courts "look to federal cases discussing the FLSA and the corresponding federal regulations" for assistance in analyzing Wisconsin's administrative regulations. *Madely v. RadioShack Corp.*, 2007 WI App 244, ¶ 13, 306 Wis. 2d 312, 742 N.W.2d 559 (Wis. Ct. App. 2007). The court notes that the FLSA has substantially similar, and in some cases identical, regulations implementing the FLSA with regard to whether an employer "suffered or permitted" an employee to work. *See* 29 C.F.R. §§ 785.11–12. The court will therefore also look to federal cases applying corresponding provisions of the FLSA to interpret the Wisconsin Administrative Code as it relates to Wisconsin's Wage Law.

The Seventh Circuit has stated that to satisfy the "suffered or permitted" element of an overtime claim, a plaintiff must demonstrate that her employer knew or had reason to believe that the plaintiff was performing work. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011). In *Kellar*, the court stated that "[t]o state a claim under the FLSA, [the plaintiff] must show that [the employer] had actual or constructive knowledge of her overtime work." 664 F.3d at 177. The court elaborated further on the employer's duty to exercise control over an employee's work:

> The FLSA imposes an obligation on the employer "to exercise its control and see that work is not performed if it does not want it to be performed." The employer "cannot sit back and accept the benefits without compensating for them." "[The employer's] duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." The mere promulgation of a rule against overtime work is not enough. Nor does the fact that the employee performed the work voluntarily necessarily take her claim outside the FLSA.

*Id.* (internal citations omitted).

Despite the employer's obligation to control when and if an employee works, the court also stated

5

that

> the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about. *See* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."); *Reich*, 28 F.3d at 1082 ("[A]n employer's knowledge is measured in accordance with is duty . . . to inquire into the conditions prevailing in his business. . . . [A] court need only inquire whether . . . [the employer] had the opportunity through reasonable diligence to acquire knowledge." (internal quotation marks and citations omitted)); 29 C.F.R. § 785.11 ("The employer knows or has reason to believe that he is continuing to work.").

*Id*. *See also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008) ("It is clear an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work.").

Applying the knowledge standard set forth in *Kellar*, the court will address the predominance and superiority requirements of Rule 23(b)(3).

**A. Predominance**

There is significant overlap between Rule 23(b)(3)'s predominance requirement and Rule 23(a)'s commonality requirement. However, the predominance requirement is "far more demanding." *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997). "Rule 23(a)(2) requires common issues of law or fact, and Rule 23(b)(3) requires that such common issues not only exist but predominate over others in the case." *Nicholson v. UTi Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2011 WL 1775726, at *7 (S.D. Ill. May 10, 2011).

In its December 12, 2011 Order, this court stated the following:

The plaintiffs argue that they were permitted to work off-the-clock in order to finish assigned work. The plaintiffs agree that there was a policy disallowing overtime, but that in order to complete their work, the plaintiffs needed to work before or after an assigned shift, or through lunch. The plaintiffs testify that the overtime they worked occurred on the defendant's premises. Based on these facts, the plaintiffs assert that the defendant violated Wisconsin's Wage Law.

6

(Dec. and Order, Dec. 12, 2011, at 8, ECF No. 101.)

The court found that the plaintiffs met the commonality requirements based on the facts discussed above, because the question of whether Kohler suffered or permitted the plaintiffs to work uncompensated hours was common to the entire class. In its February 14, 2012 Order denying the defendant's motion for reconsideration, this court again found that the commonality requirement was met, despite the need to demonstrate that the employer knew or had reason to believe that the plaintiff was completing off-the-clock work, because the existence or non-existence of an unofficial policy denying compensation for time worked would drive the resolution of the litigation. In support of the court's decision to again find a common question, the court cited an analogous case, *Ross v. RBS Citizens*, 667 F.3d 900, 909 (7th Cir. 2012), in which the Court of Appeals affirmed the district court's commonality finding. The Seventh Circuit stated that "[a]lthough there might be slight variations in how Charter One enforced its overtime policy, both classes maintain a common claim that Charter One broadly enforced an unlawful policy denying employees earned-overtime compensation." *Id*. The Court of Appeals further stated that the defendant's "unofficial policy is the common answer that potentially drives the resolution of this litigation." *Id.*

The Seventh Circuit did not address the district court's predominance analysis on appeal. However, Judge Lefkow's class certification order is instructive regarding whether the common question in this case predominates over individual issues.

In *Ross v. RBS Citizens*, No. 09 CV 5695, 2010 WL 3980113, at *6 (N.D. Ill. Oct. 8, 2010), *aff'd* 667 F.3d 900 (7th Cir. 2012), the plaintiffs argued that "[a]lthough Charter One had a policy stating that all hours worked would be compensated, . . . an unofficial policy existed to deny [hourly employees] of

7

overtime." Specifically, the plaintiffs in *Ross* alleged that Charter One (1) "instructs its nonexempt employees to record hours worked over forty per week," (2) "occasionally erases or modifies nonexempt employees' recorded overtime hours," (3) "provides comp time to nonexempt employees instead of paying overtime," and (4) "requires its nonexempt employees to perform work during unpaid breaks." *Id*. at *2. In support of their motion for class certification, the plaintiffs "submitted ninety-six statements of potential hourly class members who worked at eighty-five branches under fifty-three different managers." *Id*.

The defendants argued that "determining whether overtime was denied would require individualized, or at least branch by branch, manager by manager, determinations . . . ." *Id*. at *6. Judge Lefkow stated that the common issue of whether a company-wide policy existed to deny overtime would "predominate over the variations in methods used to accomplish the alleged policy," citing to the similar allegations made by potential class members across the branches, managers, positions, and time frames. *Id*. She further stated that "[t]he complexity of proof is a problem plaintiffs will have to address in presenting their case on the merits but it does not negate predominance of the central, common issue." *Id*.

The defendants also made the following argument:

[T]o prove liability individual inquiries will be required as to whether an individual recorded all time worked each week and, if not, the reason why; whether an individual worked over forty hours in that week, and if so, whether that time was paid; whether an individual's manager instructed the individual to work overtime or at least knew that overtime was being worked; whether an individual's manager removed overtime that was recorded and, if so, whether the change was lawful; and whether the amount of overtime that was not paid was *de minimis*.

*Id*. at *7. In response to the defendants' argument, the court stated that the individual inquiries cited by the defendants would be more relevant in determining individual damages, which does not typically

8

prevent class certification. *Id*. However, the court also stated that "[t]o the extent such inquiries will be necessary to a determination of liability, solutions can be devised to make the inquiry fair, efficient, and manageable." *Id*. *See also Nicholson*, No. 3:09-cv-722-JPG-DGW, 2011 WL 1775726, at *8 (S.D. Ill. May 10, 2011) (common question of whether defendant "had or did not have uniform policies of requiring or allowing work without pay" predominated over individual issues regarding what activities each plaintiff undertook during time subtracted from work hours and whether activities were *de minimis*).

The defendant in this case makes arguments similar to those advanced in *Ross* with regard to the individualized inquiries necessary to prove liability. Specifically, Kohler states that the case will hinge on "what each putative class member was allegedly told by his or her individual supervisor, how they interpreted those statements, and how they implemented them on a daily, weekly, and monthly basis." (Def.'s Mem. Opp'n 22, ECF No. 77.) Like Judge Lefkow, I previously found that the potential need to make individualized damage determinations does not outweigh the common issue with regard to liability. *See Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008). ("[T]he need for individual damages determinations does not, in and of itself, require denial of [the plaintiff's] motion for certification.")

Additionally, like Judge Lefkow, this court finds that the complexity of proof will be an issue that the plaintiffs must deal with in presenting their case. However, the difficulty of proving an unofficial policy does not negate the fact that a common issue exists and predominates over the possible individual issues that may arise. The plaintiffs all claim that they were not compensated for the work they performed because they were not allowed to record each hour worked or they worked through unpaid breaks or they were provided compensatory time in a different pay period. Although the methods for failing to compensate the individuals may differ, the common issue of whether Kohler had an unofficial policy to deny compensation for working time predominates over the individual issues raised.

9

Judge Lefkow briefly mentioned the issue of actual or constructive knowledge, but this court will address the element more specifically. As stated above, to prove that an employer suffered or permitted an employee to work uncompensated hours, a plaintiff must demonstrate that the employer knew or had reason to believe that the employee was working. Proof can be either through direct evidence of actual knowledge, or the plaintiff may demonstrate that, based on the circumstances, the employer had reason to believe that the employee was working uncompensated hours in addition to his or her regular hours.

Vang, the named plaintiff, provided the most detailed information regarding her interaction with her supervisor, John Bashaw. Her deposition testimony provides, in relevant part, as follows:

> Q    Okay. And as I understand it, what you're telling me is that after that Overly memo, you just did not write down your hours accurately; you just left it at eight, right?
> A:    Yes.
> Q:    Now, there were a few times though you did put down some overtime, right?
> A:    Yes, if it was okayed.
> Q:    But I think you also said that Mr. Bashaw never said, you know, it's not okayed, right?
> A:    He did say its not okay to claim.
> Q:    I guess I'm still - - If you wanted to work overtime, you were supposed to go to your supervisor before and say, look, I need to work an extra two or three hours today, right?
> A:    No. I would just work. The work needed to be done.
> Q:    That's what you would do?
> A:    Yes.
> Q:    And how often are you doing that?
> A:    Pretty much every day.
> Q:    You were working two or three hours extra every day?
> A:    Through lunch, after, staying until six.
> Q:    Well–
> A:    Seven.
> Q:    Okay. So, then I would assume then that prior to the Overly memo I'm going to see, I don't know, 15 to 18-plus hours of overtime every week on your time-slips, right?
> A:    There should be overtime on there, yes.
> Q:    Fifteen, 18 hours? That's three hours a day, five days a week?
> A:    It's not every single day.

| | | |
|---|---|---|
| Q: | You just said it was. | |
| A: | On average, it's every day. | |
| Q: | So, what time are you getting in in the morning? | |
| A: | Eight o'clock. | |
| Q: | Okay. What time are you leaving at night? | |
| A: | Seven, seven-thirty. | |
| Q: | You're leaving after him? | |
| A: | No; we leave together. | |
| Q: | And you're not taking a lunch? | |
| A: | Sometimes I wouldn't. | |
| Q: | And he would tell you not to write down your overtime? | |
| A: | Yes. | |
| Q: | What would he say to you? | |
| A: | I would ask him if I could claim the overtime. And he would say I cannot. | |
| Q: | And would you ask him this every day or just once a week? | |
| A: | Once a week. | |
| Q: | And when would you do this? | |
| A: | Towards the end of the week or early the following week. | |
| Q: | So, would you do it in his office? | |
| A: | Yes. | |
| Q: | Okay. Why don't you tell me how this weekly conversation would occur? | |
| A: | I would ask if I could claim the whatever number of hours, or if I could claim my hours of overtime for the week. And he would tell me, no, I cannot; or yes, I can, because of a particular project or circumstance that was preapproved. | |
| Q: | And when would this typically–when would this conversation typically occur? | |
| A: | At the end of the week or early the following week. | |
| Q: | Would you tell him how many hours you were talking about? | |
| A: | No. It was yes overtime, or no overtime. It didn't matter the number of hours. | |

(Vang Dep. 102:1–104:22, ECF No. 76-4.)

Vang's testimony indicates that her supervisor, Bashaw, knew that Vang was working uncompensated overtime hours. Thus, such testimony, to the extent that it is found credible by the ultimate factfinder, is direct evidence that Kohler knew that one of its employees was working uncompensated overtime hours. *See Cunningham v. Gibson Elec. Co., Inc.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999) (supervisors' knowledge of uncompensated work is imputed to the employer).

The other employees who were deposed recounted similar, though not identical, circumstances

11

as those encountered by Vang. (Bergeron Dep. 43:14–45:17, ECF No. 76-5; Fleischmann Dep. 42:22–45:23, ECF No. 76-6; Ricker Dep. 23:22–25:11, ECF No. 76-7.) The deponents testified that they were no longer allowed to work overtime, but that despite the new policy, their respective work loads did not decrease. The deponents asserted that they were therefore expected to complete the same amount of work in fewer hours. This caused the deponents to work either before or after their shifts, or during unpaid breaks to complete assigned work. The deponents stated that they then underreported work hours in compliance with the unofficial policy of disallowing overtime hours, or would accept "comp time" in the following week to compensate for the extra hours worked the week prior.

The testimony from the other employees deposed in this action indicates that they were on the work site, that they worked through their lunch, or before or after their respective shifts to complete the heavy workload they were assigned. The individual employees also indicated that direct supervisors kept standard eight to five work hours and would therefore arrive after or leave before the individual employees. If the supervisors were putting in fewer hours at the office than their subordinates, there should have been an inquiry into whether the individual employees were working overtime, despite the employee's decision to not report the overtime. Indeed, "[a]ny employer 'who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.'" *Cunningham*, 43 F. Supp. 2d at 975 (quoting *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (internal brackets omitted)).

To demonstrate that Kohler either knew or had reason to believe that its employees were completing work off-the-clock, the plaintiffs need not present evidence from each class member regarding what his or her individual supervisor knew or had reason to believe. Instead, the plaintiffs need

12

only present evidence that *Kohler* knew or had reason to believe that work was being completed off-the-clock. *See Brennan v. Qwest Commc'ns Int'l, Inc.*, No. 07-2024 ADM/JSM, 2009 WL 1586721, at *6 (D. Minn. June 4, 2009) ("[T]he relevant question is not whether a specific supervisor knew that off-the-clock work was occurring but rather whether the circumstances were such that Qwest, as the employer, knew or should have known that off-the-clock work was occurring.")  The court will not provide a specific framework which the plaintiffs may use to prove their case.  However, it is clear that under the objective "reason to believe" standard, the plaintiffs may demonstrate, based on the circumstances present at Kohler, that Kohler had reason to believe that its employees were completing uncompensated work. *See Reich*, 28 F.3d at 1082 ("In reviewing the extent of an employer's awareness, a court need only inquire whether the *circumstances* . . . were such that the employer either had knowledge of overtime being worked or else had the opportunity through reasonable diligence to acquire knowledge.") (internal quotations omitted).  The evidence presented thus far is adequate to demonstrate that an unofficial policy of failing to compensate employees for all hours worked may exist.

The court therefore finds that the common legal questions affecting Kohler's liability predominate over any individualized factual and legal questions involved in this action.

**B.  Superiority**

The second part of the Rule 23(b)(3) analysis requires the court to determine whether a class action is superior to individual litigation by each class member.  Rule 23(b)(3) states that a court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

13

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 12(b)(3).

The court may easily dispose of three of the four factors listed above. First, there is no evidence that individual class members have a desire to bring their own case in order to have control of the prosecution or defense of his or her specific claims. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("[S]mall recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). Second, the court is unaware of any pending litigation with regard to the issues in this case. Third, the unlawful conduct alleged in the complaint all occurred within the boundaries of the Eastern District of Wisconsin, so the concentration of the case in this forum appears to be appropriate and desirable.

To be sure, this case may present manageability issues. As discussed above, individual issues will arise when determining damages. But, as the court stated in the December 12, 2011 Order, "the need for individualized damages determinations does not, in and of itself, require denial" of a motion for class certification. *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008). Instead, the court can devise solutions to address individualized damages issues, if such a need presents itself. *Id*. Such solutions include:

> (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

14

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (footnote omitted), *superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006).

Additionally, as stated in the court's December 12, 2011 Order certifying the class, determining whether Kohler had a policy or practice of suffering or permitting its employees to work uncompensated overtime will apply to all members of the class. Addressing this issue as to all class members in one fell swoop is efficient for the plaintiffs, the defendant, and the court.

Based on the reasons discussed above, I find that proceeding as a class action on the plaintiffs' claims is superior to litigation by each individual plaintiff. The plaintiffs have therefore satisfied the requirements of Rule 23(b)(3).

### III. CONCLUSION

The court finds that the plaintiffs have met their burden of establishing that the common question of whether Kohler has an unofficial policy of not compensating employees for all hours worked predominates over individual issues that may arise. The court also finds that proceeding as a class action is superior to litigation by the plaintiffs individually. Thus, the court will deny the defendant's motion for reconsideration and the class will remain certified.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for reconsideration be and hereby is **DENIED**;

**SO ORDERED** this 17th day of July 2012, at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

15