UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| Jennifer Vang,<br><br>        Plaintiff,<br><br>Kohler Co.<br>a Domestic Corporation,<br><br>        Defendant. | CIVIL ACTION No. 710<br><br>Case No.: 09-cv-000842-WEC<br>Jury Trial Demanded |

**DEFENDANT KOHLER CO.'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT
AND IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEY'S FEES
PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiff and her Counsel argue that their Motion is reflective of what transpired at the status conference before this Court on December 17, 2012, and that their proposal to have eight named plaintiffs is materially different than having a collective action with eight opt-ins. Both arguments are blatantly false, misrepresent what occurred on December 17, 2012, and demonstrate bad faith on the part of Plaintiff and her Counsel. Defendant respectfully requests that the Court not only deny this Motion to Amend Complaint, but also award its costs and attorney's fees pursuant to Rule 11 of the Federal Rules of Civil Procedure.

As outlined in the Minute Sheet from the December 17, 2012 status conference, Counsel for Defendant orally moved to decertify Plaintiff's 29 U.S.C. § 216(b) collective action. When pressed on the matter, Counsel for Plaintiff then "clarifie[d] they are withdrawing motion to certify rule 23 class, and stipulate to decertify 216b FLSA collective action." (Dkt. No. 120.)

There was no mutual consent to decertify; Defendant pressed the issue with an oral motion at which time Plaintiff acquiesced.[1]

Even assuming there had been a mutual stipulation, it is disingenuous for Plaintiff and her Counsel to suggest that amending the Complaint in this manner comports with the letter or spirit of the alleged agreement. At page 6 of their Brief, for example, Plaintiff and her Counsel state that "[t]he Complaint is no longer brought on behalf of a single named Plaintiff and a Collective Class, but is instead brought by several Plaintiffs on behalf of themselves." Such a proposition is specious, at best. Why would Defendant stipulate to the dismissal of a collective action with eight opt-ins only to have those individual claims later rejoined under the guise of an amended complaint? Whether styled as a collective action with eight opt-ins, or a group action with eight named plaintiffs, Plaintiff and her Counsel are still proposing to litigate a series of individual claims in a single lawsuit without any commonality between them. This lack of commonality prompted the Seventh Circuit to vacate the Rule 23 class that had been certified in this case, and likely prompted Plaintiff and her Counsel to dismiss the 29 U.S.C. § 216(b) collective action that had been certified.

The legal and factual impediments to a group action in this case also prompted Kohler to serve Plaintiff and her Counsel with an advanced copy of a Notice of Motion and Motion for Costs and Attorney's Fees Pursuant to Rule 11 of the Federal Rules of Civil Procedure.[2] In that Motion, Kohler put Plaintiff and her Counsel on notice that it would consider further advocacy of class or collective claims to be frivolous. Although Plaintiff and her Counsel were careful to abandon their specific request for relief pursuant to the formal class and collective mechanisms –

---

[1] Defendant acknowledges that the Court's December 17, 2012 Order indicates that the parties entered into an oral stipulation to decertify the collective action on the record. (Dkt. No. 121.) Again, however, as outlined in the Minute Sheet, Plaintiff stipulated only after Defendant moved to decertify. (Dkt. No. 120.)

[2] A true and correct copy of that Notice of Motion and Motion is marked and attached as Exhibit 2 to the Declaration of Keith E. Kopplin submitted herewith.

2

Rule 23 and 29 U.S.C. § 216(b) – their Motion has the same practical effect of attempting to join individual claims in a single action. For that reason, Kohler respectfully requests that the Court grant its costs and attorney's fees in addition to denying the Motion to Amend Complaint because full consideration of the proper legal standard confirms there is no "good cause" to amend the Complaint, nor any legal or equitable basis to toll the limitations periods of the former opt-ins.

I. **This Motion Is A Frivolous Attempt By Plaintiff And Her Counsel To Circumvent The Seventh Circuit's August 28, 2012 Order Vacating Their Class Action, Their Own December 17, 2012 Stipulation Decertifying Their Collective Action, And Defendant's November 26, 2012 Rule 11 Safe Harbor; Plaintiff And Her Counsel Should Be Sanctioned As A Result.**

This action was commenced on September 2, 2009 seeking class and collective status for a group of Kohler Administrative Assistants. This Court would eventually certify both the class and collective groups over the objection of Kohler. Pursuant to that process, notice was sent to Kohler's current and former Administrative Assistants, seven (7) of whom joined the named Plaintiff, Jennifer Vang, by filing opt-in consent forms with the Court in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act.

Since then, Kohler twice petitioned the Seventh Circuit Court of Appeals to assess the propriety of a Rule 23 class action on the record that had been established in this case. Pursuant to Kohler's second request, the order certifying Plaintiff's class action was vacated on August 28, 2012, with a recommendation that additional evidence be taken regarding its viability. According to the Seventh Circuit, "[u]nless plaintiffs can establish a firm-wide policy, Rule 23(a)(2) prevents class certification." Despite requesting and receiving additional time, Plaintiff and her Counsel failed to conduct any further discovery. In fact, Plaintiff and her Counsel failed

3

to respond to written discovery propounded on them by Defendant on October 15, 2012, which was designed to elicit whatever proof they had on the issue of commonality.[3]

Instead of exchanging discovery, or otherwise attempting to bolster their claims, Plaintiff and her Counsel did nothing for more than ninety (90) days until they finally, formally abandoned their class claims and decertified their collective claims at the status conference before this Court on December 17, 2012. These voluntary actions returned the above-captioned matter to an individual claim – a result clearly supported by the facts in the record and the law outlined by this Court and the Seventh Circuit. Nevertheless, Plaintiff and her Counsel are once again trying to circumvent these guiding principles. In the process, they are also effectively asking the Court for a mulligan. Plaintiff and her Counsel were given time to establish their right to join individual claims in a single lawsuit. That right was also challenged in written discovery from Defendant. Rather than face these issues, Plaintiff and her Counsel are trying to avoid them altogether through procedural maneuvering.

Nevertheless, Plaintiff and her Counsel argue that their Motion to Amend Complaint is not brought in bad faith. (Pl.'s Br. at 4-5.) Defendant disagrees. Simply put, this Motion is a thinly veiled attempt by Plaintiff and her Counsel to circumvent the Seventh Circuit's August 28, 2012 Order vacating their class action, not to mention their own December 17, 2012 stipulation decertifying their collective action and dismissing the seven former opt-ins. It is also a frivolous attempt by Plaintiff and her Counsel to pursue relief on a group basis after being put on notice by Kohler that such relief is not supported by existing facts or law. In light of the foregoing,

---

[3] A true and correct copy of Defendant's October 15, 2012 First Request For Admissions, Interrogatories and Request For Production of Documents to Plaintiff Jennifer Vang is marked and attached as Exhibit 1 to the Declaration of Keith E. Kopplin submitted herewith.

4

Defendant requests that the Court not only deny the Motion to Amend Complaint, but also grant its costs and attorney's fees incurred in opposition thereto, pursuant to Rule 11.

"One of the basic purposes of Rule 11 of the Federal Rules of Civil Procedure is 'to deter baseless filings in the district court . . . .'" *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). "The very point of Rule 11 is to lend incentive for litigants 'to stop, think and investigate more carefully before serving and filing papers,'" *Berwick Grain Co., Inc. v. Illinois Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (quoting *Cooter & Gell*, 496 U.S. at 398), and litigants "may not drop papers into the hopper and insist that the Court or opposing counsel undertake bothersome factual and legal investigation." *Mars Steel Corp. v. Cont'l Bank, N.A.*, 880 F.2d 928 (7th Cir. 1989) (*en banc*).

On November 26, 2012, Defendant served a 21-day "Safe Harbor" advance copy of this Motion on Plaintiff and her Counsel as required by Rule 11(c)(2), putting them on notice that Defendant would seek sanctions to the extent they continued to pursue class or collective claims in this case. Whether in response to this "Safe Harbor," the Seventh Circuit's August 28, 2012 Order, or simply the lack of factual and legal support for their allegations, Plaintiff and her Counsel elected to abandon their class and collective claims on December 17, 2012. Less than two weeks later, however, they renewed their frivolous attempt by filing this Motion.

Again, whether styled as a Rule 23 class action, a 29 U.S.C. § 216(b) collective action, or a group action with eight named plaintiffs, the practical reality is the same – Plaintiff and her Counsel are attempting to join disparate claims in a single lawsuit without any showing of commonality, nor any promise of efficiency. Such a maneuver is arguably a ploy by Plaintiff and her Counsel to circumvent the Seventh Circuit's August 28, 2012 Order, not to mention a repudiation of their December 17, 2012 stipulation. Because Plaintiff and her Counsel are again

5

Case 2:09-cv-00842-WEC   Filed 01/11/13   Page 5 of 16   Document 125

attempting to join dissimilar claims in a single lawsuit, Defendant respectfully requests that the Court not only deny their Motion, but also award its costs and attorneys' fees incurred pursuant to Rule 11.

II. **With Due Consideration To The Proper Legal Standards, Plaintiff And Her Counsel Should Not Be Permitted To Amend The Complaint, Nor Toll The Limitations Period With Respect To Any Of The Seven Former Opt-Ins.**

Despite initially suggesting that any of the seven former opt-ins wishing to proceed with their potential claims would do so in individual lawsuits, Plaintiff and her Counsel filed this Motion, seeking to amend the Complaint, add the seven former opt-ins as additional named plaintiffs, and retroactively toll their respective limitations periods. Their motive is transparent. Irrelevant and unrelated testimony from one plaintiff becomes the building block foundation for the claim of another. At some point in time a jury becomes so lost in the maze of testimony that what should otherwise be individual evidence becomes collective proof without ever meeting the requirements of Rule 23 or 29 U.S.C. § 216(b). According to Plaintiff and her Counsel, their Motion should be "freely given," and tolling would be consistent "with decisions around the country." (Pl.'s Br. at 2.) Those assertions are wrong.

Plaintiff and her Counsel must show "good cause" for amending the Complaint after the deadline set forth in the Court's January 6, 2010 Scheduling Order. *See* Fed. R. Civ. P. 16(b)(4). That is the correct standard, and generally focuses on the diligence with which the untimely party has acted. Because Plaintiff and her Counsel were not diligent in seeking to add the former opt-ins as named plaintiffs, their Motion must be denied. Second, there is no statutory or equitable basis for tolling. *See Espenscheid, et al. v. DirectSat USA, LLC, et al.*, 09-cf-625-bbc (W.D.

6

Wis. July 7, 2011).[4] As such, the limitations periods with respect to the seven former opt-ins must continue to run unless and until they initiate their own individual lawsuits.

Even beyond the legal reasons, there are practical reasons for denying this Motion. Again, by seeking to amend the Complaint to add the seven former opt-ins as named plaintiffs, Plaintiff and her Counsel are attempting to make an end-run around the Seventh Circuit's August 28, 2012 Order, not to mention their own December 17, 2012 stipulation. Simply put, the lack of commonality that prompted Plaintiff and her Counsel to abandon their class claims and decertify their collective claims dooms their proposed amendment. Again, each individual worked for a separate and distinct supervisor, in a different area of Kohler's business, during a unique timeframe. The trial of one individual's claim will do nothing to advance the claims of any of the other individuals. To the contrary, it will only serve to distract, confuse, or fatigue the jury, as they struggle to recall who was supervised by whom, who allegedly said what to whom and when, whether and to what extent overtime was paid to a given individual, and so on.

In fact, the mischief and inefficiency caused by combining these highly individualized claims would actually be amplified by allowing the amendment because the Court would not have the procedural tools and legal precedent developed for managing class and collective claims. If the Motion to Amend Complaint is granted, for example, each of the new plaintiffs would need to consent to Magistrate jurisdiction; each would likely seek individualized discovery; each would be subject to separate motions for summary judgment or to dismiss their claims; each would be subject to individualized defenses like *de minimis non curat lex*, estoppel, and unclean hands; each could be subject to a separate offer of judgment pursuant to Rule 68;

---

[4] Pursuant to Civil L.R. 7, a copy of Judge Crabb's unpublished order is marked and attached as Exhibit 3 to the Declaration of Keith E. Kopplin submitted herewith.

each would be entitled to a trial by jury; and each would be entitled to separate jury instructions and special verdict forms.

In short, if their Motion is granted, Plaintiff and her Counsel would succeed in creating a *de facto* class of eight separate and dissimilar individuals each of whom would be the master of their own individual lawsuit, sharing little more than the caption, case number, and defendant with one another. Then, without the procedural safeguards and rigorous proofs subsumed in a Rule 23 class action or a 29 U.S.C. § 216(b) collective action, the eight plaintiffs would attempt to reap the benefits of otherwise improper or irrelevant testimony to bolster their distinct and individual claims. Such an outcome is not supported by the applicable law, and cannot be allowed.

> *A.*   ***Because The Court's January 6, 2010 Scheduling Order Specifically Addressed Amendments To The Pleadings, This Motion Should Not Be "Freely Given" Pursuant To Federal Rule Of Civil Procedure 15; Instead, Plaintiff And Her Counsel Must Demonstrate "Good Cause" For Their Amendment, Pursuant To Federal Rule Of Civil Procedure 16.***

Plaintiff and her Counsel assert that "[l]eave to amend a complaint under Federal Rule of Civil Procedure 15(a)(c) should be freely given when justice so requires." (Pl.'s Br. at 2.) What they fail to acknowledge, however, is that Rule 15's "freely given" standard *only* governs in the absence of a scheduling order addressing amendments to the pleadings. Where, as here, a scheduling order sets a deadline for amending the pleadings, a party seeking to modify that deadline must demonstrate "good cause" – a decidedly higher standard. *See* FED. R. CIV. P. 16(b)(4); *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) ("To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause.'"); *see also O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F. 3d 152, 154 (1st Cir. 2004) (Rule 16(b)'s "good cause" standard,

rather than Rule 15(a)'s "freely given" standard, governs motions to amend filed after scheduling order deadlines).

On January 6, 2010, the Court entered a Scheduling Order setting deadlines in this case. Among other things, the Court ordered that "[t]he parties may amend their pleadings or join additional parties on or before March 1, 2010." (Dkt. 15 at ¶ 1.) Now, however, almost three years later, Plaintiff and her Counsel are seeking to amend the Complaint to add the seven opt-ins they recently dismissed as additional named plaintiffs. Because their Motion to Amend Complaint comes years beyond the Court's deadline, it should not be "freely given." Instead, Plaintiff and her Counsel must show "good cause" for their amendment.

### B.   *There Is No Good Cause To Amend The Complaint.*

"In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) (citing *Trustmark*, 424 F.3d at 553); *see also* 3 Moore's Federal Practice § 16.14[1] [b], at 16–72 (Matthew Bender 3d ed. 2010) ("[A]lthough undoubtedly there are differences of views among district judges about how compelling a showing must be to justify extending the deadlines set in scheduling orders, it seems clear that the factor on which courts are most likely to focus when making this determination is the relative diligence of the lawyer or lawyers who seek the change."). Because Plaintiff and her Counsel were not diligent in seeking to amend the Complaint, their Motion must be denied.

In assessing the diligence of Plaintiff and her Counsel, it is important to keep in mind that the individuals they are attempting to name as plaintiffs have each been involved in this litigation for more than a year and a half.[5] That begs a simple, but important question – Why didn't

---

[5] Christine Barnard, the most recent opt-in, filed her consent-to-join form with the Court on May 9, 2011.

9

Plaintiff and her Counsel seek to amend the Complaint to add these individuals earlier? Assuming such an attempt came within a reasonable time after the individuals filed their opt-in consent forms with the Court, it would be difficult to argue that a lack of diligence caused Plaintiff and her Counsel to miss the March 1, 2010 deadline. After all, how could Plaintiff and her Counsel attempt to add named plaintiffs until they became aware of their identities and interest in joining the lawsuit? Again, such a chronology could have demonstrated a degree of diligence.

As the Court knows, however, that is not what transpired. To the contrary, Plaintiff and her Counsel did not file their Motion until "*after* the parties' stipulation to the decertification of the Collective Class." (Pl.'s Br. at 5, with emphasis.) In other words, the only reason Plaintiff and her Counsel are seeking to amend the Complaint now is that their litigation strategy failed. Simply put, Plaintiff and her Counsel waited until the death knell had sounded with respect to their class and collective claims before moving to amend the Complaint. At that point, after realizing that their hopes of a class and/or collective action were gone, Plaintiff and her Counsel voluntarily dropped those allegations and filed this Motion to Amend Complaint to add the seven opt-ins they dismissed as additional plaintiffs. Because a failed litigation strategy does not demonstrate "good cause" for missing a deadline set by the Court's Scheduling Order, the Motion to Amend Complaint must be denied. *Cf. Whitehead v. Malone*, 2002 WL 849583 (N.D. Ill. May 3, 2002) ("The Court does not see how a party's litigation strategy is 'good cause' for failing to serve a summons and complaint and will not extend the time for service.").

Plaintiff and her Counsel may continue to argue that allowing them to amend the Complaint now will narrow the issues and expedite the resolution of this case. (Pl.'s Br. at 4.) After all, these individuals "wish to litigate the same alleged violations of wage and hour laws by

Defendant." (Pl.'s Br. at 7.) Such an argument, however, fails to acknowledge the significance of the Seventh Circuit's August 28, 2012 Order. These are not "the same alleged violations." Again, there is no common policy, plan, or decision affecting Plaintiff and the seven former opt-ins. If there were, this case would have remained a class and/or collective action. Without such commonality, litigation of this case will inevitably devolve into eight individual cases, none of which depends upon the outcome of the others. As noted previously, the Court will be forced to manage a *de facto* class without the benefit of the procedural rules and legal precedent developed to handle such litigation. The likelihood of error would increase by a factor of eight, and Kohler's costs will also increase as it searches for ways to keep these distinct legal claims separate from one another.

But – Plaintiff and her Counsel may argue – there is overlapping proof in this case; most notably, the testimony of Kohler's management personnel. Again, such an argument misses the mark. Certainly there could be some overlapping testimony regarding Kohler's lawful policies from human resources and payroll personnel. Ironically, the plaintiffs will doubtless seek to avoid this testimony. Further, the volume of such testimony would pale in comparison to what is needed to bring the eight proposed individual claims to trial.

Each individual had a separate and distinct supervisor, each worked in a different area of Kohler's business, each had different routines, practices, schedules, and working conditions, and each worked during a unique timeframe. What's more, despite the fact that this case has been pending for over three years, not a single supervisor has been deposed Plaintiff and her Counsel. That means that, at a minimum, eight individuals would need to be deposed before this proposed case could be brought to trial. Plaintiff and the seven former op-ins will also need to propound individualized written discovery with respect to each of their individual claims, adding further

11

delay. Individual actions, by contrast, would only require one supervisory deposition and one set of written discovery. This means that the trial for Jennifer Vang (the only current Plaintiff) would actually be *delayed* if this Motion was granted, not expedited.

But even assuming Jennifer Vang's trial would not be delayed, that still does not establish good cause. *See United States v. 1948 S. Martin Luther King Dr.*, 270 F.3d 1102, 1110 (7th Cir. 2001) (holding that mere lack of delay to trial was insufficient to show good cause, where there was no convincing excuse for party's tardiness) ("The judge is not required to allow a party to file any untimely motion as long as it does not delay trial. Rather, a party must provide the court with good cause to excuse the tardiness, regardless of whether or not there will be a delay. Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation.").

Plaintiff and her Counsel may also continue to argue that allowing their proposed amendment would not prejudice Kohler. (Pl.'s Br. at 7.) Defendant completely disagrees. As outlined above, allowing Plaintiff and her Counsel to add the seven former opt-ins as named plaintiffs would require Defendant to litigate eight individual claims in a single action without any commonality to expedite the litigation, nor any procedural mechanisms or precedential authority for managing the trial. It would dramatically increase the Defendant's costs and disrupt its normal business operations. The simple logistics of attempting to coordinate what now becomes a three-week (as opposed to a three-day) trial to accommodate schedules of dozens of individuals (plaintiffs, managers, supervisors, and other witnesses) becomes daunting. It would also clearly delay the final disposition of the action as it is currently postured – one plaintiff versus one defendant.

Citing the wrong legal standard, Plaintiff and her Counsel focus on reasons they believe their Motion to Amend Complaint should not be denied, including their assertion that the amendment will narrow the issues and expedite the trial, that it was not brought in bad faith, and that it will not prejudice Defendant. In addition to being factually incorrect, these assertions address the wrong side of the coin. The proper standard requires Plaintiff and her Counsel to demonstrate "good cause" for why their Motion should be granted. Because they did not and cannot do so, their Motion should be denied.

### C. *There Is No Basis For Tolling.*

Plaintiff and her Counsel spend little more than a single page arguing that the limitations periods should be tolled with respect to the seven former opt-ins until such time as the Amended Complaint (or their individual Complaints) can be filed. There is no legal or equitable basis for tolling in this case. As such, the limitations periods must continue to run unless and until such filings are made.

Plaintiff and her Counsel cite three out-of-circuit decisions to support their request for tolling. These cases, however, provide only a cursory discussion of that issue, without any substantive analysis. Judge Barbara Crabb, by contrast, provided a detailed analysis in an Order denying a request for tolling under similar circumstances. *See Espenscheid, et al. v. DirectSat USA, LLC, et al.*, 09-cf-625-bbc (W.D. Wis. July 7, 2011) ("[E]ven if I thought it appropriate to determine whether the decertification order tolled the statute of limitations, I would deny plaintiffs' motion to toll the statute of limitations because neither Fed. R. Civ. P. 23 nor the FLSA provides any support for the tolling requested by plaintiffs."). Defendant requests that the Court adopt the rationale and conclusion of Judge Crabb and deny the request for tolling in this case.

With respect to the claims certified pursuant to Federal Rule of Civil Procedure 23, Judge Crabb confirmed that:

> the unnamed class members were protected by the tolling of the statute of limitations during the time the class certification was awaiting decision and until the class was decertified. Plaintiffs contend that the statute of limitations continues to toll during the pendency of their interlocutory appeal. However, the Court of Appeals for the Seventh Circuit has explained that the tolling period "ends as soon as the district court declines to certify the case as a class action . . . [and] that time begins immediately, rather than after final judgment or decision on appeal." Hemenway v. Peabody Coal Co., 159 F.3d 255, 265-66 (7th Cir. 1998) (citing Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1384 (11th Cir. 1998)). See also In re Copper Market Antitrust Litigation, 300 F. Supp. 2d 805, 810 (W.D. Wis. 2003) ("[T]he overwhelming authority on this issue holds that tolling stops once a court denies certification.").
>
> * * *
>
> In sum, plaintiffs have not shown that their claims are tolled by operation of Rule 23.

*Id.* at 3-6. In accordance with the foregoing, the two-year limitations period with respect to the state law claims of all individuals except for Plaintiff Jennifer Vang began to run with the Seventh Circuit's August 28, 2012 Order vacating the class certified pursuant to Rule 23.

With respect to the claims certified pursuant to 29 U.S.C. § 216(b), Judge Crabb further confirmed that

> there is no language in the FLSA that provides for tolling the claims of former opt-in plaintiffs following decertification of a collective action. 29 U.S.C. §§ 216(b), 256. Recognizing this, plaintiffs contend that the court should "equitably toll" the statute of limitations during the pendency of their interlocutory appeal, citing cases in which district courts have equitably tolled the statute of limitations, often with little or no discussion. E.g., Proctor v. Allsups Convenience Stores, Inc., 250 F.R.D. 278, 284 (N.D. Tex. 2008); Reed v. County of Orange, 266 F.R.D. 446, 464 (C.D. Cal. 2010).
>
> However, the court of appeals has explained that equitable tolling applies only in extraordinary situations where "despite all due diligence, a plaintiff cannot obtain the information necessary to realize that he may possibly have a claim." Jones v. Res-Care, Inc., 613 F.3d 665, 670 (7th Cir. 2010) (quoting Beamon v. Marshall & Ilsley Trust Co., 411F.3d 854, 860 (7th Cir. 2005)); Soignier v. American Bd. of

14

Plastic Surgery, 92 F.3d 547, 553 (7th Cir. 1996) ("Equitable tolling applies when a plaintiff, despite the exercise of due diligence and through no fault of his own, cannot determine information essential to bringing a complaint."). Because plaintiffs are seeking to toll the statute of limitations, they bear the burden of establishing that they have acted diligently but have been prevented from asserting their rights through no fault of their own. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990).

> Plaintiffs have not met this burden. In particular, they have presented no evidence that any former class member who has exercised due diligence will be barred from filing suit because he or she has been unable to "obtain the information necessary to realize that he [or she] may possibly have a claim." Jones, 613 F.3d at 670. Accordingly, plaintiffs' motion to toll the statute of limitations will be denied.

*Id.* at 3-6. In accordance with the foregoing, the limitations periods with respect to the Fair Labor Standards Act claims of all individuals except for Plaintiff Jennifer Vang began to run with Plaintiff's December 17, 2012 stipulation to decertify the 29 U.S.C. § 216(b) collective action. As with the former opt-ins in *Espenscheid*, there is no proof that any of the former opt-ins in this case acted diligently but have been prevented from asserting their rights through no fault of their own; as such, their potential claims continue to erode pursuant to the applicable limitations period.

### III.  Conclusion.

Because Plaintiff and her Counsel are continuing to advocate group claims in circumvention of the Seventh Circuit's August 28, 2012 Order, their own December 17, 2012 stipulation, and Defendant's November 26, 2012 "Safe Harbor," Defendant respectfully requests that the Court award its costs and attorneys' fees incurred pursuant to Rule 11.

Even assuming, *arguendo*, Plaintiff and her Counsel have complied with Rule 11, they have not demonstrated the required "good cause" for amending their Complaint almost three years after the Court's deadline, nor any cause for tolling the limitations periods with respect to the seven former opt-ins. Their Motion to Amend Complaint should be denied as a result.

Dated at Milwaukee, Wisconsin, this 11th day of January, 2013.

        KRUKOWSKI & COSTELLO, S.C.

        <u>s/ Kevin J. Kinney</u>
        <u>s/ Keith E. Kopplin</u>
            Kevin J. Kinney
            *State Bar No. 1003942*
            Keith E. Kopplin
            *State Bar No. 1044861*
            Krukowski & Costello, S.C.
            1243 N. 10th Street, Ste. 250
            Milwaukee, WI 53205
            (414) 988-8400
            (414) 988-8402 Facsimile
            E-mail:kjk@kclegal.com
            E-mail: kek@kclegal.com

        ATTORNEYS FOR DEFENDANT KOHLER CO.

147337/93047-13