UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| Jennifer Vang,<br>      Plaintiff,<br>v.<br>Kohler Co.,<br>a Domestic Corporation,<br>      Defendant. | Case No. 2:09-cv-00842-WEC<br><br>PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER MOTION TO AMEND COMPLAINT |

  To avoid unnecessary briefing on the appropriateness of collective action treatment in this matter, for such a small number of opt-ins, Plaintiff agreed to decertify the § 216 collective action in an effort move past procedural hoops and get to the merits of each opt-ins' legal claims. During the December 17th, 2012 status conference the parties disagreed what should happen with each opt-in upon decertification. Importantly, despite Kohler's misunderstanding of the Court's order, the Court did not dismiss each opt-in from the action with its Order. (Dkt. 121.) The Court did not do so because the parties disagreed as to what each opt-ins status should be going forward. The Court provided the parties a briefing schedule with regard to Plaintiffs motion to amend her complaint and request for other relief. (Dkt. 121.) Plaintiff's motion is currently before the Court.

  Kohler, in addition to responding to Plaintiff's motion, filed a separate motion for sanctions, but combined its response brief and its brief in support

Page 1 of 13

of it new motion for sanctions. Kohler did not mention the filing of such a brief on December 17, 2012 and the Court has not provided a briefing schedule for this motion. FED. R. CIV. P. 11(c)(2) requires such a motion be made separately from any other motion. Civil L. R. 7(b) provides Plaintiffs with 21 days to respond to such a motion and Plaintiff will do so in a separate response brief.

## LEGAL ARGUMENT

A motion for leave to amend a complaint is generally evaluated under FED. R. CIV. P. 15(a)(2) which provides that leave "should freely [be granted] when justice so requires." FED. R. CIV. P. 15(a)(2). However, FED. R. CIV. P. 15(a)(2) "is in some tension with the rule that governs scheduling orders" – FED. R. CIV. P. 16. Alioto v. Town of Lisbon, 651 F.3d 715, 719 (7th Cir. 2011). Where there is a conflict between the motion to amend and a scheduling order, FED. R. CIV. P. 16(b)(4) requires a showing of "good cause" prior to "considering whether the requirements of Rule 15(a)(2) were satisfied." Id.

Plaintiff does not believe such a conflict exists here as the Court amended its initial scheduling order and provided Plaintiff with a briefing schedule for her motion to amend. Even if Kohler is correct that this two-step process, necessitating a showing of good cause, is applicable here, Plaintiff acted with extreme diligence in requesting amending her complaint contemporaneously with the parties stipulation to decertify the § 216(b)

collective action. Moreover, Kohler has not established that it is somehow prejudiced, that Plaintiff has delayed since agreed to decertify, that Plaintiff has acted in bad faith, or that the amendment would be futile.

    I.    **Good cause is not necessary as the Court set a new briefing schedule for the motion to amend and for tolling during the December 17, 2012 scheduling conference.**

Kohler argues that Plaintiffs must first establish good cause prior to the Court considering the requirements of Rule 15(a)(2). However, this ignores the fact that in this matter, the Court revised its initial January 6, 2010 Scheduling Order on multiple occasions. More directly to the issue at hand, the Court, in its December 17, 2012 Order Decertifying Collective Action and Setting Briefing Schedule, set a new briefing schedule on Plaintiff's request to amend her complaint. Because the Court itself modified the January 6, 2010 Scheduling Order, specifically with its setting of a briefing schedule in its December 17, 2012 Order, FED. R. CIV. P. 16(b)(4) is not applicable. For this reason, Plaintiff's moving brief focused on FED. R. CIV. P. 15(a)(2) only.

    II.    **Good cause is present in this matter as Plaintiff was diligent in moving to amend her complaint.**

To the extent that the Court requires a showing of "good cause" pursuant to FED. R. CIV. P. 16(b)(4) by Plaintiff, good cause is clearly present in this matter. In making a FED. R. CIV. P. 16(b)(4) good cause determination,

Case 2:09-cv-00842-WEC    Filed 01/16/13    Page 3 of 13    Document 128

"the primary consideration for district courts is the diligence of the party seeking the amendment." Alito, 651 F.3d at 720. In other words, the Court should look to how diligent Plaintiff was in asking the Court to amend the Complaint when it became known to Plaintiff that amendment was in fact necessary.

Plaintiff is asking the Court to amend her complaint to add as named plaintiffs the individuals who had previously opted into the action. These individuals were previously opt-in plaintiffs and remained opt-in members until the Court's Order on December 17, 2012. Prior to this time, there was no reason to amend the complaint because the opt-in plaintiffs were already participating in the action pursuant to the FLSA opt-in mechanism. Contemporaneously with Plaintiff's Counsel's agreement to decertify the § 216(b) collective action, Plaintiff's Counsel asked the Court to allow her to amend her complaint adding the opt-in plaintiffs as named plaintiffs. Plaintiff did not wait one single day to do so. It cannot be said that Plaintiff was anything but diligent in asking the Court to amend.

Kohler's claim that the complaint should have been amended each time an opt-in consents to join the collective action is not founded in law. Kohler does not cite any legal authority for the proposition that an opt-in plaintiff must, to take part in the action, become a named plaintiff. 29 U.S.C. § 256 and 29 U.S.C. § 216(b) specifically provide for opt-ins to join a collective

action without becoming a named plaintiff. Moreover, because the original scheduling order in this matter required pleadings be amended by March 1, 2010, but Plaintiff's motion for conditional certification was not due until March 31, 2010, it would have been impossible for Plaintiff to amend her complaint each time someone opted into the collective action. There simply is no requirement that a complaint be amended each time an individual opts into a collective action.[1] Plaintiff brought the matter to the Court contemporaneously and moved to amend her complaint within two weeks of agreeing to decertify the action – one of which was a holiday week.

Kohler cites United States v. 1948 S. Martin Luther King Drive, 270 F.3d 1102, 1110 (7th Cir. 2001) for a requirement that Plaintiff establish good cause for her tardiness. In 1948 S. Martin Luther King Drive, the defendant waited from November 1998 to April 1, 1999, after the deadline set by the district court for dispositive motion, to bring a motion to dismiss attacking the sufficiency of the complaint – something that could have been done much earlier in the action. Id. In that matter, the defendant did not provide any reason for his tardiness. Here, Plaintiff was in no way tardy; there is no tardiness to explain away. Had she waited six months after decertification of the collective action to bring a motion to amend her complaint, she would

---

[1] In a large collective action, this would result in thousands of amendments to the complaint and an every changing caption.

have been tardy. Plaintiff did not so wait. She asked the Court to amend the complaint contemporaneously with the agreement to decertify the action to get to the merits of the underlying claims.

Because Plaintiff was diligent in asking for leave to amend her complaint by doing so contemporaneously with her stipulation to decertify the collective action, good cause has been established. Therefore the Court should analyze the FED. R. CIV. P. 15(a) factors to determine if an amendment to the complaint is proper in light of the fact that leave should be freely granted.

### III. The Rule 15(a) declares that leave should be freely given in the absence of various factors which are not present here.

Plaintiffs are not asking to add legal claims which were not in existence prior to the Decertification Order, or individuals who did not originally opt-into the action. Kohler has been aware of each of the claims that are made by each opt-in since those individuals opted into the action – there is no prejudice here. Kohler does not claim that the amendment would be futile – each opt-in has a legitimate claim for unpaid wages that must be provided the opportunity to be tested in court. Kohler does not claim that Plaintiff has acted in bad faith[2] with regard to the merits of each opt-in's claims.

---

[2] Though Kohler claims that Plaintiff has failed to answer certain discovery, Kohler's cover letter to that discovery is clear that if Plaintiff does not move for class certification, Kohler agreed to withdraw their requests. Plaintiff so agreed, but Kohler has now reneged on its offer to withdraw

Moreover, Plaintiff's efforts to streamline the matter by getting to the merits of each opt-ins claims, rather than spending additional time briefing FED. R. CIV. P. 23 and § 216(b) matters, further establishes Plaintiff's good faith. Plaintiff's goal of getting to the merits of the case is the exact opposite of causing further delay in contesting and further briefing of FED. R. CIV. P. 23 and § 216(b) matters.

    Kohler argues it would be prejudiced by an amendment adding the opt-ins as named plaintiffs. Kohler argues that litigating eight cases at one time would be more burdensome than litigating eight individual cases over an unknown period of months. Kohler ignores the fact that litigating eight individual actions will waste additional court resources and the resources of Plaintiffs and Plaintiffs' counsel. The parties drafting seven new sets of initial pleadings, participating in seven additional pretrial scheduling conferences, seven sets of discovery, seven summary judgment motions, and seven sets of pre-trial filings certainly prejudices Plaintiff and the opt-ins, but the burden on the Court is much more.

    Kohler's logistical concerns regarding trial are presumably the same either way – the same witnesses must be scheduled regardless of whether the case goes forward as one action with eight plaintiffs, or eight separate

---

their requests. This will be more fully addressed in Plaintiff's response to Kohler's motion for sanctions.

actions. Moreover, if Plaintiff's motion is denied, various Kohler representatives would be required to testify at each of the eight individual trials. It is doubtful that Kohler's argument for eight separate trials is even more burdensome on Kohler.

Similarly, Kohler argues that going forward, discovery would be taken as to each of the eight supervisors and other written discovery to each of the eight plaintiffs. Kohler ignores the fact that this discovery is going to happen regardless of whether it takes place as one action, or as eight individual actions. Kohler's argument that it is more burdensome because "[i]ndividual actions, by contrast would only require one supervisory deposition and one set of written discovery" (Dkt. 125, p. 12) ignores that going the individual route would result in this happening eight times. Discovery focused on Kohler's policies, FED. R. CIV. P. 30(b)(6) depositions, depositions of human resource and payroll personnel could be conducted once, or eight separate times. Certainly, it is much more efficient to conduct discovery as one claim. This is especially true in light of the fact that Kohler has already deposed four of the opt-in plaintiffs and Vang herself. Starting over would be a waste of the parties and the Court's resources.

Kohler argues that Plaintiff is simply asking for a mulligan or trying to circumvent the Seventh Circuit's order – neither of which is true. Plaintiffs are not, by asking to allow the seven individuals who have affirmatively

opted into the lawsuit, binding any absent class members or deciding the merits of hundreds of Kohler employees. The Court will simply decide the merits of each of the eight plaintiffs.

Kohler fails to explain how going forward would be unworkable had these eight individuals filed an action, as eight named plaintiffs at the onset, of this litigation. There is no requirement that in such an action the plaintiffs establish commonality. Moreover, Kohler's allegation that there is no commonality here lacks a basis in fact and is against this Court's prior order granting conditional certification. Plaintiff's wiliness to decertify the action was not based on a belief she could not hold a collective action together, but rather an effort to move the case forward towards the actual merits of her claim. Kohler also argues that there are certain procedural tools this court does not have or cannot use in managing this case because it is not going forward as a class or collective action. But Kohler does not identify what tools this Court would be stripped up in managing this matter going forward, nor does Kohler argue why those tools cannot be utilized now.

In a recent FLSA case before Judge Crabb, one with thirty opt-ins, upon decertification the court explained "there are only 30 opt-in plaintiffs and [the court does] not think it would be too difficult to manage a case with 30 named plaintiffs..." Teed et al. v. Thomas & Betts Power Solutions, 08-cv-303-bbc, Dkt. 85, p. 16 (W.D. Wis. January 11, 2012). Certainly, maintaining

a thirty plaintiff action under the FLSA would be much more difficult than an eight plaintiff action as Plaintiff requests here.

> IV. Tolling, or a stay on an order dismissing the opt-ins, is appropriate in this matter to protect the opt-ins statutes of limitations from continuing to run.

Courts may permit equitable tolling as part of an order denying collective action certification at the decertification phase. In these cases, tolling, often in the form of a stay, is intended to provide opt-in plaintiffs with reasonable time to file individual suits once they have received notice that their claims were dismissed. The court in Johnson v. TGF Precision Haircutters, Inc., 2005 U.S. Dist. LEXIS 44259, 2005 WL 1994286, at *8 (S.D. Tex., Aug. 17, 2005) explained the principle behind ordering tolling in these circumstances: "To avoid prejudice to individual opt-in Plaintiffs who may choose to file their own cases, the Court invokes its equity powers to toll the applicable statutes of limitations for 30 days after the entry of this Order." Id. For the same reasons, in England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 511 (M.D. La. 2005), when the court decertified the collective action and dismissed the opt-in plaintiffs' claims, the court withheld entry of final judgment for thirty days to permit those individual plaintiffs who wanted to proceed with individual claims to file an individual suit. The Court explained that this would "protect the claims of those plaintiffs who sought to join in the proposed collective action." Id. There is a great amount of authority for

the Court to either toll the statute of limitations or stay its decision for a short period of time so that each opt-in can protect his or her rights under the FLSA. Moreover, doing so is simply fair to the opt-ins who will need some time to file their individual claims should the Court dismiss them from this action.

This matter is different than the facts in Espenscheid v. DirectSat USA, LLC, 09CV625-bbc (W.D. Wis. July 7, 2011) (Dkt. 126-3). In Espenscheid, Judge Crabb actually dismissed each opt-in plaintiff in her decertification order. Espenscheid v. DirectSat USA, LLC, 2011 U.S. Dist. LEXIS 56062 (W.D. Wis. May 23, 2011). This Court has not yet ordered the opt-ins in this matter be dismissed without prejudice. Rather, when presented with arguments from the parties on December 17, 2012 as to what should happen to the opt-ins, the Court asked the parties brief the matter prior to dismissing the opt-ins from the action.

If the Court dismisses the opt-in plaintiffs from this action and feels that it cannot toll the statute of limitations, despite district courts doing so across the country, Plaintiff respectfully asks the Court stay its order for a period of 45 days to allow each Plaintiff to file an individual action with the Court.

### V. The Court can utilize other tools in the future to properly manage this action.

Kohler's concerns with regard to the manageability of the trial itself can be addressed at a latter point of this litigation. After the close of discovery on the merits, and perhaps dispositive motions should they be filed, the Court can have the parties submit a detailed trial plan. At that point, if the Court feels a single trial is unworkable, or a trial on liability followed by individual trials on damages would not suffice, the Court can order separate trials for each of the eight individuals. Perhaps subgroups would resolve the issues. Such an approach would allow the parties to avoid start from scratch with seven new complaints, answers, and sets of discovery. It would also ensure that Kohler's concerns as to an unworkable trial are fully addressed before the Court.

### CONCLUSION

For these reasons, Plaintiff respectfully requests the Court grant her motion to amend her complaint. If the Court denies Plaintiff's motion to amend, Plaintiff asks the Court either stay its decision for forty-five days allowing the opt-ins to file individual claims or toll the statutes of limitation for an equal period.

Dated this 16th day of January, 2013.

        CROSS LAW FIRM, S.C.
        Attorneys for Plaintiff

        s/ LARRY A. JOHNSON
        Larry A. Johnson
        ljohnson@crosslawfirm.com
        Noah Reinstein
        nreinstein@crosslawfirm.com
        Nola J. Hitchcock Cross
        njhcross@crosslawfirm.com
        The Lawyers Building
        845 N. 11th Street
        Milwaukee, WI 53233
        414-224-0000